ROBERT E. BRADEN, Respondent, v. CHICAGO BURLINGTON & QUINCY RAILROAD CO., Appellant.

**Kansas City Court of Appeals, November 3, 1913.**

1. **MASTER AND SERVANT: Damages: Railroads.** While plaintiff was cutting weeds and grass for the defendant along its right of way, his horse fell into a concealed ditch and was so badly hurt that it had to be killed. *Held*, that the injury to the horse was due to a risk assumed by plaintiff and cannot be attributed to any negligence of defendant.

2. ————: ————: ————. A servant assumes the risks that are ordinarily incident to the service he undertakes. A master is not an insurer of the safety of his servant and the measure of his duty is not to furnish his servant an absolutely safe place in which to work, but a place free from all risks and dangers that are not ordinarily incident to the kind of work the servant is employed to perform.

3. ————: ————: ————: **Assumption of Risk.** The assumption of a risk appears to involve the facts of comprehension, that a peril is to be encountered and a willingness to encouter it; that is to say, a positive exercise of volition in the form of assent to the risk.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

REVERSED.

*O. M. Spencer, Frank Sheetz, Maurice Roberts* for appellant.

*Paul D. Kitt* for respondent.

JOHNSON, J.—Plaintiff, a farmer, was employed by a section foreman of defendant in August, 1910, to cut weeds and grass on defendant's right of way for a distance of about three-quarters of a mile west from Utica station. He was to use his team and mowing machine where it was practicable and to cut the re-

mainder by hand. One of the section men accompanied him. After working with his machine until near the close of the first day, one of the horses fell into a ditch on the right of way and was so injured that he had to be killed.

Plaintiff sued in a justice court to recover the value of the horse on the ground that its death was caused by defendant's negligent breach of a duty to warn him of the ditch, the presence of which, plaintiff contends, was concealed by a very thick and rank growth of weeds. The cause was tried in the circuit court without the aid of a jury and resulted in a judgment for plaintiff. Defendant appealed.

The evidence consisted of the testimony of plaintiff and his companion, the section hand who was sent by defendant to help him. While driving the mowing machine westward on the south side of the railroad they came to a natural drainage ditch that crossed the right of way from southeast to northwest and crossed under the track through a culvert. The track was on an embankment that was, perhaps, sixteen feet high, perpendicular measure, and had sloping sides. The ditch was about six feet wide and six feet deep. Although, as stated, the weeds were very thick, plaintiff says he observed the ditch when he was forty feet from it and got off of the machine and went forward on foot to see if he could drive the team and mower across it. Another natural drainage ditch about two and one-half feet wide and two and one-half feet deep coming from the west on a course parallel to the embankment, emptied into the larger ditch at a point estimated by plaintiff as being twelve or fourteen feet and by the helper as being six feet south of the culvert. Plaintiff states that he did not discover this small ditch on account of the weeds and drove across the larger one without knowing of its presence. His team crossed at a place just north of the small ditch and his machine had just reached the top of the west bank when the

near horse fell and landed on his back in the small ditch where he remained until the next morning. His injuries were so severe that plaintiff decided to kill him. Plaintiff testified that he did not know what caused the horse to fall but founds his action on the inference that it stepped or slipped into the concealed ditch. The helper's version of the injury differs materially from plaintiff's and gives a plausible reason for the accident. He states that plaintiff knew of the presence of the small ditch and attempted to drive across to the tongue of land lying between the embankment and the small ditch and that as the machine was ascending the west bank the off horse shied at the culvert and pushed the near horse over into the small ditch.

If we were sitting as triers of fact we would accept the statement of the helper as being more in accord with the conceded physical facts than that of plaintiff. It is difficult to believe that plaintiff could not and did not see the mouth of the small ditch and the break in the weeds that must have been plainly marked by its course if, as he states, he could see the large ditch forty feet away and made a careful inspection to determine whether or not he could cross it in safety; but since all issues of fact were resolved by the trial court in favor of plaintiff and the judgment before us necessarily was based on the hypothesis that the small ditch was so concealed by vegetation that plaintiff could not detect it from his position on the east side of the large ditch, nor while he was crossing, we shall accept that view of the occurence, despite its repugnance to plain and conceded physical facts. We do this merely for the purposes of argument and because we are convinced that plaintiff has no cause of action against defendant under any possible view of the facts.

The gist of the cause he asserts is the breach of a master's duty to exercise reasonable care to furnish

his servant a reasonably safe place in which to work. He does not claim and would not be heard to claim that such duty compelled defendant to furnish him a smooth and level surface on which to cut weeds (Post v. Railway, 121 Mo. App. 562), but does contend that defendant was bound to warn him of the presence of natural drainage ditches that were obscured by vegatation and into which he, unawares, might drive his horses to his injury and damage.

The rules are too well settled to call for discussion or require the citation of authorities that a servant assumes the risks that are ordinarily incident to the service he undertakes; that the master is not an insurer of the safety of his servant and that the measure of his duty is not to furnish his servant an absolutely safe place in which to work, but a place free from all risks and dangers that are not ordinarily incident to the kind of work the servant is employed to perform. As stated in Elliott on Railroads (2 Ed., sec. 1283):

"The general rule is that where the danger is an extraordinary one, that is, a danger not ordinarily incident to the service, and the employer has knowledge of such danger, he is guilty of negligence if he fails to warn the employee. Where, however, the danger is obvious to a person of ordinary intelligence and one that can be known and appreciated by a person who exercises ordinary prudence and care, or where it is not an extraordinary peril but is one incident to the service, there is no duty to give warning unless the person employed has not reached the years of discretion."

Counsel for plaintiff ask, "How can a servant assume something of which he has no knowledge, actual or constructive?" and answer the question by pointing to the rule that "The assumption of a risk appears to involve the facts of comprehension that a peril is to be encountered and a willingness to encounter it; that

is to say, a positive exercise of volition in the form of assent to the risk." [Adolff v. Baking Co., 100 Mo. App. 1. c. 209; Roberts v. Tel. Co., 166 Mo. 1. c. 378.]

This is true, but does not a servant hired to mow a field have both actual and constructive knowledge of the topographical features common to all fields? Hills, slopes, vales, water and drainage courses, gullies, large and small, stumps and sometimes stones, are general characteristics, and a farmer employed to mow a field covered with rank vegetation knows that he will encounter many such natural obstacles and must be on the lookout for them. If such are not natural risks, it is hard to imagine any that would be. Must a farmer who hires a man to mow his field warn him beforehand of every hidden gully, stump or stone on pain of being forced to answer in damages for any injury to his servant that may result from such a risk? The suggestion is too absurd to be entertained for a moment. Such risks are natural, incidental to the employment and are assumed by the servant. The mere fact that plaintiff was employed by a railroad company to mow its field instead of by a neighboring farmer is immaterial. The same law applies to all classes of employers.

Clearly the injury to the horse was due to a risk assumed by plaintiff and cannot be attributed to any negligence of defendant.

The judgment is reversed. All concur.