ZAHNER MANUFACTURING COMPANY, APPELLANT, v. A. R. HARNISH ET AL., DEFENDANTS; D. A. MORR TRANSFER & STORAGE COMPANY, RESPONDENT.

Kansas City Court of Appeals. February 17, 1930.

*Jay L. Oldham* for appellant.

*Nourse & Bell* for respondent.

BLAND, J.—This is a suit in replevin. The case was tried before the court without the aid of a jury resulting in a judgment in favor of plaintiff, but thereafter the court sustained defendants' motion for a new trial, not assigning any reason therefor. Plaintiff has appealed. The court having failed to state its reason for granting a new trial, it may be assumed that it was on the ground that the verdict was against the weight of the evidence as this was one of the grounds for a new trial set forth in the motion. [Alexander v. Allison, 224 S. W. 50; King v. Mann et al., 199 S. W. 705; Bernheimer v. Scott, 228 S. W. 523.]

It is well settled that the trial court has authority to grant one new trial to each party upon the ground that the verdict is against the weight of the evidence (section 1454, Revised Statutes 1919), and that the granting of a new trial on such a ground will not be disturbed by the appellate court if there is substantial evidence that would justify a result contrary to the verdict, and in no case will the granting of such a new trial be disturbed unless the evidence is such

that no verdict in favor of the party to whom a new trial is granted could be allowed to stand. [Alexander v. Allison, supra; King v. Mann et al., supra; Bernheimer v. Scott, supra.]

Most of the facts are undisputed. In view of the fact that we may assume that the trial court sustained the motion for a new trial on the ground that the verdict was against the weight of the evidence, in stating the facts we will state those that are disputed in their most favorable light to the defendant, D. A. Morr Transfer & Storage Company, which is the only defendant that made any defense in the trial court.

Plaintiff was a corporation and engaged as a manufacturer and dealer in restaurant equipment. Defendant, Melvin P. Allen, was a dealer in restaurant equipment and defendant, D. A. Morr Transfer & Storage Company, was a corporation engaged in the business of warehouseman. Plaintiff rested its claim to the property sought to be replevined upon three chattel mortgages, each securing a promissory note. These notes and mortgages were executed by one A. R. Harnish in favor of plaintiff. The first of these notes was executed on July 1, 1921, and was in the sum of $5799.77. The second was dated May 15, 1922, and was in the sum of $3391. The third was dated June 16, 1924, and was in the sum of $1236.71. All of these mortgages were duly recorded and at that time constituted a first lien upon the property they covered. Subsequently all but $2000 of these notes was paid by the maker thereof. At the time of the making of the first note and mortgage Harnish was setting up a restaurant business, known as the Bliss Cafeteria, in the Boley building at the northwest corner of Twelfth and Walnut streets in Kansas City. The first note and chattel mortgage covered certain restaurant equipment bought by Harnish from plaintiff at the time and installed in the former's restaurant. At the time of the giving of the second note and mortgage, which likewise covered restaurant equipment, Harnish was in business at the same place. In the month of February, 1924, Harnish was forced to close this restaurant and the fixtures and equipment, with the express consent of the plaintiff, were stored in the storage house of the defendant, D. A. Morr Transfer & Storage Company.

About June 1, 1924, Harnish made another attempt at the restaurant business and at this time opened a place at 1204½ Grand avenue. At that time he made the purchase of the equipment covered by the third note and mortgage. This venture was shortly thereafter abandoned by Harnish and the equipment was thereupon stored by him with the defendant storage company. After this time Harnish had several conversations with an officer of the plaintiff relative to the storage charges that were required to be paid. This officer told Harnish to "let" the storage company "go collect their storage bill." This officer testified that he consented to the storage of the property

when it was removed from the Boley building restaurant but thought that it would be stored at another place. However, Harnish testified that this officer of plaintiff gave him permission to store the goods with the defendant, storage company, or the A. B. C. Storage Company. The witness selected the defendant. The officer in question admitted that he had known six months prior to the filing of this suit on January 16, 1925, that the equipment was stored with the defendant, storage company. However, plaintiff said nothing to the defendant about the matter until three days before the filing of this suit when plaintiff wrote the storage company the following letter:

"This is to advise you that we hold chattel mortgage, *on all merchandise, fixtures and equipment, stored in your warehouse, by A. R. Harnish, or Bliss Cafeteria*, and under no circumstances are you to permit of anyone removing or your delivering any part of such merchandise, fixtures or equipment, to anyone, excepting on our order." (Italics ours.)

It appears that after Harnish discontinued his second restaurant and stored the equipment therein with the defendant, storage company, he moved some of the articles to the place of business of the defendant, Melvin P. Allen, who sold some of them and turned over the proceeds thereof to the plaintiff. The remainder of the equipment in Allen's hands was taken by the sheriff under the writ of replevin herein. The storage company did not request plaintiff to pay the storage charges until after the filing of this suit.

This suit was brought in six counts. Each one of the first three counts is based upon one of the chattel mortgages heretofore described. The last three counts constitute suits on each of the three notes executed by Harnish and pray judgment against him for the amounts thereof with interest. Each one of these three chattel mortgages was a purchase money mortgage and each described specific personal property followed by words of a general description of other restaurant equipment at the location mentioned therein (the location described in the first two mortgages being the Boley building and in the third 1204½ Grand avenue) but the property covered and described in each mortgage was limited to property purchased from the plaintiff "being the goods and property this day purchased by grantor of the said Zahner Manufacturing Company, together with all other goods heretofore purchased by grantor of and mortgaged to the said Zahner Manufacturing Company." However, neither the petitioner nor the writ of replevin so limited the property described in such writ, but they merely mentioned the specific property described in each of the mortgages and "all other goods not heretofore specificially described and now used for restaurant purposes, also, all goods to be placed in the future in said premises." (Then follows the description of the premises being the basement of the Boley building at the northwest corner of Twelfth and Wal-

nut streets, in the first two counts of the petition, and 1204½ Grand avenue, in the second count.) As before stated, the writ, with the exception of a slight clerical error, followed the description in the petition.

The sheriff took from the defendant, storage company, under the writ all of the property in its possession which had been stored there by Harnish. However, a material part of the property so taken was not covered by plaintiff's mortgages. The sheriff turned over all of the property so seized to the attorney for plaintiff without requiring him to select the property upon which plaintiff held mortgages, and said attorney gave to the sheriff a receipt reading as follows:

"Kansas City, Mo., Jan. 16, 1925.

"Received from John L. Miles, Sheriff of Jackson County, Missouri, in the above entitled cause the property mentioned in the within writ."

The defendant, storage company, in its answer claimed a lien on all of the goods stored by Harnish for its storage charges, amounting to $262, alleging that the storage was with the approval, knowledge, consent and acquiescence of plaintiff. The answer also set up that plaintiff had no right to the possession of the items of property mentioned in the answer not covered by plaintiff's mortgages, and further that the first mortgage was paid prior to the filing of the suit. The reply consisted of a general denial.

Plaintiff contends that the statute, sections 13490 and 13491, Revised Statutes 1919, which provides for warehousemen's liens "does not confer any priority to a lien of a warehouseman over that of a prior mortgage duly recorded." This is no doubt true. [40 Cyc., p. 458; Birmingham v. Carr, 196 Mo. App. 411; Storms v. Smith, 137 Mass. 201.] However, a lien of a warehouseman takes precedence over that of a chattel mortgagee when the latter has consented, expressly or impliedly, or acquiesced in the storage of the goods by the mortgagor. [40 Cyc., p. 458; 11 C. J., p. 659; Lazabus v. Moran et al., 64 Mo. App. 239; Miller v. Crabbe, 66 Mo. App. 660, 662; Pickett v. McCord, 62 Mo. App. 467; Schmidt v. Bekins Van & Stor. Co., 155 Pac. 647 (Calif.); Swanson Bros. v. Smith, 185 Ill. App. 440; Howes v. Newcomb, 146 Mass. 76; Vollmer Clearwater Co. v. Union Warehouse & Supply Co., 248 Pac. 865, 867.] Especially is this true where, as in this case, there has been a default in the payment of the debt. After condition broken the mortgagee of personal property is regarded as the *absolute owner*, at least for the purpose of possession and foreclosure. [Lange v. Midwest Motor Sec. Co., 231 S. W. 272, 274.] There was substantial evidence that plaintiff consented and acquiesced to the storage of the goods with the defendant storage company in this instance.

It is claimed by the plaintiff that the storage company waived its lien by "voluntarily" delivering the goods to the plaintiff without requiring the latter to identify the same "as the identical chattels called for in the writ of replevin" and that respondent waived "any lien on the chattels not mentioned in the writ of replevin . . . by voluntarily surrendering all of the chattels in its possession belonging to defendant, Harnish, without demanding that appellant identify the chattels called for in said writ."

The petition and writ is ambiguous as to the goods sought to be replevied. However, it appears that all of the parties hereto have treated the writ as calling for all of the property stored by Harnish with the storage company. It is quite apparent that there was sufficient evidence from which the court might say that this was the intention of the plaintiff because three days before suit was filed it notified the storage company that it claimed a lien "on all merchandise, fixtures and equipment stored in your warehouse by A. R. Harnish," and when plaintiff received all of the goods seized its attorney receipted for the same as the property mentioned in the writ. While the receipt does not in so many words so state, taking it together with all of the facts and circumstances shown, it would appear that the trial court could have so considered it. Plaintiff is to be presumed to have known the goods upon which it had chattel mortgages and the receipt of it from the sheriff of more than it was entitled to and the retention of all of the property was equivalent to directing the sheriff to take the property in the first place.

The evidence falls short of showing that the storage company voluntarily surrendered any of the property and the burden was upon plaintiff to so show. In this connection the testimony shows that the sheriff appeared at the place of business of the storage company with the writ for the purpose of seizing the goods; that, thereupon, it notified him and the plaintiff of its storage charges amounting to $259 and demanded payment of the same. The sheriff thereupon took all of the goods stored by Harnish then in the possession of the storage company and stored them with the storage company. Whether the defendant or the sheriff selected the goods to be taken is not shown. Thereafter the sheriff made a written order upon the storage company to deliver the goods to the plaintiff, which was done by the storage company, and the sheriff took a bond from the plaintiff for the goods so delivered. While a warehouseman may waive his lien the presumption of the law is against such a waiver and the intent to waive must be established by the one asserting it. However, where the warehouseman permits the depositor to remove the goods it will be presumed that the lien has been waived or abandoned. [40 Cyc. 459; Sec. 13492, R. S. 1919.] However, a warehouseman's lien is not waived when the property is taken from his pos-

session without his consent or by force, and it follows that there is no waiver where the property is taken from the warehouseman involuntarily, as by a replevin suit. [37 C. J. 337; Hawkins v. Taylor & Bush, 15 Mo. App. 238, 241.] The evidence falls short of showing whether the defendant, warehouse company, did anything more than yield to the writ and if it did so such yielding was not a waiver of its lien. The burden of showing a waiver was upon the plaintiff.

We conclude that there was evidence from which the trial court might have found that the defendant had a lien as against plaintiff for storage charges on all of the property for which plaintiff obtained judgment, including that upon which plaintiff holds chattel mortgages as well of course, as that to which plaintiff has no right to any claim.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.