Peggy SCHABBING, by her Next Friend, Helen Mayberry, (Plaintiff) Respondent-Appellant,

v.

William B. SEABAUGH, Executor of the Estate of J. O. Seabaugh, Deceased, (Defendant) Appellant-Respondent.

Nos. 31962, 31975.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

Rehearing Denied Oct. 20, 1965.

Vogel & Frye, Cape Girardeau, for plaintiff-respondent-defendant.

Jackson, Thomasson & Dickerson, Cape Girardeau, for defendant-appellant-respondent.

BRADY, Commissioner.

Jury trial in this action for wrongful death resulted in a verdict for the plaintiff, wife of the deceased, in the amount of $10,000.00. The trial court sustained the defendant's motion for judgment in accordance with his motion for a directed verdict and entered judgment for the defendant with an alternative order granting him a new trial should the ruling on the motion for judgment be held erroneous. Among the reasons given by the trial court to support its alternative order was that the verdict was against the weight of the credible

evidence. It is well settled that a grant of a new trial will be sustained if any ground assigned in the motion for new trial will sustain it, City of Albany ex rel. Crane Co. v. Ace Dewey, Inc., Mo.App., 353 S.W.2d 807, and that when the trial court grants a new trial on the ground that the verdict was against the weight of the credible evidence that order is not for our review. Zahner Mfg. Co. v. Harnish, 224 Mo.App. 870, 24 S.W.2d 641. The result is that the defendant is assured of, at the least, a new trial in this cause. The only issue left for this court deals with the trial court's ruling of the defendant's motion for judgment in accordance with his motion for a directed verdict.

■ We must first digress to dispose of an appeal filed by the defendant. The notice of appeal was filed before the trial court entered its order sustaining defendant's motion for judgment in accordance with his motion for a directed verdict with the alternative grant of a new trial. After the trial court took that action the defendant's appeal was abandoned as he could not appeal from a judgment in his favor. The parties thereafter proceeded as if the defendant's notice of appeal had never been filed. However, it was filed and we must dispose of it. That appeal should be dismissed as the defendant was not aggrieved by the ultimate judgment entered by the court. We will proceed to deal with the issues raised by the plaintiff's appeal.

Sonny Schabbing was 21 years old at the date of his death in 1961. He had lived in the City of Cape Girardeau all of his life. He had never lived on a farm and had no experience with farm tractors. The Schabbings rented a house from Seabaugh which was located on a farm Seabaugh owned. Shortly afterwards Seabaugh suggested that Sonny could help him with farm work when he was not working at his regular employment at the Superior Electric Company factory in Cape Girardeau. On that occasion Sonny told Seabaugh that he had never driven a tractor and Seabaugh re-

plied that perhaps he could learn to operate one. Nothing further was said about the matter until the day of Sonny's death. On that day Sonny was home as a result of a temporary layoff at his regular employment. Seabaugh came by and asked him to help mow a field. He had two tractors brought to the house and showed Sonny how to operate one of them. Seabaugh then got on one tractor and Sonny on the other and they started off to the field. When they reached it Seabaugh drove once around the field with the mower in position. Then Sonny drove once around the field with Seabaugh on the tractor with him. Seabaugh then left Sonny alone in the field and did not return until late that afternoon. Upon his return he found Sonny on the tractor. He was in a scissoring position with his right foot caught under the two brake pedals located on the right side of the tractor and his left foot under the left tractor tire. He was split open at the rectum, his femoral artery pulled apart and death had occurred almost instantaneously. He had made about seventeen rounds of the field.

The tractor involved was a 1954 Ford four-wheel model. The clutch and gear shift operation is generally similar to that of an automobile although the positions of the shift lever in the different speeds is different. It had two brake pedals on the right side, one controlling each of the rear wheels. The tractor was found to be in good operating condition.

The field in which this accident occurred was generally described in the evidence as being hilly and having holes in it. However, it was also described as having no deep holes or gullies and being an "average pasture field" for that county. Sonny had never been in the field before. There was evidence from which the jury could find that the tractor hit a hole and then veered to the west and continued for approximately twenty-five feet before coming to a stop. There was no evidence the tractor had ever overturned.

The plaintiff submitted her case to the jury by instruction No. 1 which in its pertinent parts reads as follows: " * * * that J. O. Seabaugh left Deceased alone to operate said tractor without supervision; that deceased did not have sufficient skill, information or knowledge to safely operate said machinery at said place without supervision and that J. O. Seabaugh knew, or by the exercise of reasonable care, should have known, of such lack of skill, information or knowledge, if so; and that in so doing, J. O. Seabaugh was negligent; and that Deceased died as a result of said negligence, then your verdict will be for Plaintiff."

█ It is first necessary to ascertain what negligence was submitted by plaintiff's verdict directing instruction. That instruction required the jury to find that Seabaugh left Sonny to operate the tractor "without supervision." It then hypothesizes that Sonny did not have the skill to operate the tractor "without supervision" and that Seabaugh knew or should have known "of such lack of skill." The use of the word "such" could only cause a jury of reasonable men and women to ask themselves what lack of skill was referred to and to conclude that "such lack of skill" meant the lack of skill which would allow him to safely operator this tractor in that field "without supervision" as stated earlier in the instruction. The instruction concludes by submitting " * * * that in so doing, J. O. Seabaugh was negligent." This again can only refer back to the submission of a lack of supervision. Given a fair reading instruction No. 1 submits that Seabaugh's negligence was in leaving Sonny to operate this tractor "without supervision."

█ The plaintiff defines "supervision" as "to oversee for direction." Then she defines "direction" as "guidance, authoritative instruction" and proceeds to define "direct" as "to give guidance to; to give an order or instruction to" and "guide" as "to regulate and manage, direct, order,

govern, hence to superintend the training of, instruct." From these definitions she argues that supervision is synonymous with instruction and training. We cannot agree that a jury composed of average citizens would interpret the word "supervision" to be synonymous with instruction and training. We must take the word "supervision" in its ordinary meaning to a jury composed of average men and women. Doing so we believe "without supervision" must be read in the light of the definition of supervision given by plaintiff; that is, "to oversee for direction." As applied to the instant case that phrase was used and the jury must have interpreted it in the sense of one who failed to stay with Sonny in the field and failed to oversee and to direct his operation of the tractor and the mowing of the field. It follows that the instant case is not analogous to Post v. Chicago, B & Q R Co., 121 Mo.App. 562, 97 S.W. 233 nor to Braden v. Chicago, B & Q R Co., 174 Mo.App. 584, 161 S.W. 279, nor to Schwartz v. Kansas City Southern Ry. Co., 365 Mo. 17, 275 S.W. 2d 236. In each of those cases the plaintiff's theory was that the defendant failed to furnish him with a safe place in which to work.

█ The defendant contends the plaintiff failed to show the causal connection between the defendant's submitted negligence and Sonny's death. It is too well established to require exhaustive citation of authority that the issue of proximate cause is not for the jury where the evidence connecting the injury with the submitted negligence amounts to mere speculation or conjecture. Bauman v. Conrad, Mo.App., 342 S.W.2d 284, 1. c. 288. It is equally established that while negligence may be proved by circumstantial evidence, the circumstances must give rise to an inference of negligence which reasonably follows without guesswork or speculation. Williams v. Cavender, Mo., 378 S.W.2d 537, 1. c. 541. In ruling upon this issue we will assume, arguendo, that Seabaugh owed a duty of supervision to Sonny.

The defendant contends that " * * It is certainly permissible to infer from the facts that death came from such negligence —that an experienced and trained operator (one who had had sufficient supervision) would have been able to avoid the hole; would have been able to keep his seat and his balance upon striking the hole; and would have avoided catching his right foot between or under the two brake pedals * * *." As is apparent from this excerpt and from the whole of defendant's brief, the plaintiff's theory was that it was the hitting of this hole that caused Sonny to be bounced around on the tractor to get his foot caught and his death. Plaintiff also contends the hole was "hidden by the grass." Giving the plaintiff every reasonable benefit of such arguments, we cannot agree that she has shown a causal connection. How could supervision have resulted in plaintiff avoiding this hidden hole? Let us assume Seabaugh had provided supervision by staying in the field, where could he have so placed himself as to observe a hidden hole? Whether Seabaugh stood under a tree at the edge of the field or walked along beside the tractor, the jury could not, without resorting to the guesswork and speculation forbidden to them as well as to us, find that by providing such supervision Seabaugh could have discovered a hole which, under plaintiff's own theory, was hidden from view. Even if we carry the idea of such supervision to its ultimate extension, even if Seabaugh had ridden around the field on the tractor with Sonny, it would require guesswork and speculation to say that he could see a hole that was hidden from Sonny's view as he rode on the same tractor. We hold that the plaintiff did not make a submissible case for the reason that she failed to show a causal connection between the negligence charged and the accident which resulted in Sonny's death.

The defendant's appeal should be dismissed. The issue raised by the plaintiff's appeal should be found against her and the trial court's judgment affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The defendant's appeal is dismissed. The judgment is affirmed.

WOLFE, P. J., RUDDY, J., and J. MORGAN DONELSON, Special Judge, concur.

ANDERSON, J., not participating.