SEABOARD AIR LINE RAILWAY, A CORPORATION, *Plaintiff in Error,* v. EB. MOSELEY, *Defendant in Error.*

1. The damages authorized by section 3147 of the General Statutes to be recovered are personal to the parents *i. e.* loss of service of a minor child and mental pain and suffering of the parent caused by the wrongful death of a minor child, and an action for such damages should be by the parent personally. An administrator of the estate of the deceased minor child has no interest in or right to such recovery.

2. The subject-matter and purpose of section 3147 of the General Statutes indicate that in using the words "legal representative" the legislative intent and meaning had reference to the parties benefited by the rights conferred and not to the administrator or executor of a decedent.

S. A. L. Ry. v. Moseley—Syllabus.

3. As the statute expressly provides that a father "may recover not only for the loss of service of such minor child, but in addition thereto such sum for the mental pain and suffering of the parent * * * as the jury may assess," it was not necessary to specifically allege the elements of damage claimed. The statute gave notice of the damages that could be recovered at the trial.

4. Mental pain and suffering of the parents directly, naturally and necessarily result from the wrongful death of their minor child, and the right of the father to the minor child's services being infringed by the act of the defendant, entitled the father to recover at least nominal if not substantial damages for loss of such services.

5. The running of a train at night over a public crossing without a headlight burning on the engine is at least evidence of negligence.

6. Where there is evidence upon which the jury could legally found a verdict for the plaintiff, the court did not err in overruling the demurrer to the evidence, or in refusing an affirmative charge for the defendant.

7. In an action against a railroad company for injuries caused by its train a charge that does not require a presumption against the company to be carried into the consideration of the evidence, but only that the negligence of the defendant is presumed unless removed by a preponderance of the evidence, is no more than the statutory burden that the company shall make it appear that it was not negligent.

8. Where there is evidence to sustain the verdict and no material errors of law or procedure appears, the judgment will be affirmed.

This case was decided by the Court En Banc.

Writ of error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Geo. P. Raney, Fleming & Fleming* and *W. J. Oven,* for Plaintiff in Error;

*Bryan & Bryan,* for Defendant in Error.

WHITFIELD, C. J.—A minor child of Eb. Moseley was killed by a train while crossing the track of the railroad company on November 22, 1907. He recovered in his personal right a judgment for $2,500.00 damages for the death of the child and the company took writ of error. In each of several counts it is alleged that the death of the decedent was caused by described negligence of the defendant, and that the deceased was a minor child of the plaintiff, "Wherefore the plaintiff says that he has sustained damages to the amount of $25,000.00." It is insisted that a demurrer to the declaration should have been sustained because the action is by the father in his personal right, and because no special damages are alleged.

At common law the father is entitled to the services of his minor children, and he can maintain an action for the wrongful acts of others in injuring his child, to recover damages for loss of the child's services. But if the injuries to the child result in its death there can under the common law be no recovery for loss of services upon the theory that the private wrong to the father is merged in the crime resulting from the death, the unlawful taking of human life being a felony. Gulf C. & S. F. Ry Co. v. Beall, 91 Tex., 310, 42 S. W. Rep., 1054, 41 L. R. A., 807, and notes.

Under sections 3145 and 3146 of the General Statutes a parent as such could not recover damages directly for the wrongful death of a minor child unless the parent was

dependent on the decedent for a support. Under those sections if no consort or minor child or dependent person survived the decedent, his administrator as such could recover for injuries to his estate because of his wrongful death, and the father or mother as such could be benefited by the recovery only indirectly as heirs or devisees of the decedent. It was to remedy this condition of the law, and to give some relief to parents as such for the wrongful death of their children that section 3147 was enacted, as follows: "Whenever the death of any minor child shall be caused by the wrongful act, negligence, carelessness or default of any private association of persons, or by the wrongful act, negligence, carelessness or default of any officer, agent or employee, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, negligence, carelessness or default of any officer, agent or employee of any corporation acting in his capacity as such officer, agent or employee, the father of such minor child, or if the father be not living, the mother, as the legal representative of such deceased minor child, may maintain an action against such individual, private association of persons or corporation, and may recover not only for the loss of service of such minor child, but in addition thereto such sum for the mental pain and suffering of the parent or parents as the jury may assess."

The recovery authorized by this section is for injuries that are personal to the parents viz: loss of service of the child and mental pain and suffering of the parent. An administrator or executor of the decedent can have no interest in or right to such a recovery. In providing that the father, or if he be not living, the mother, "as the legal representative of such deceased minor child, may maintain an action" for damages, the section does not require the action to be brought as executor or as administrator of the decedent, but contemplates an action in the parent's per-

sonal capacity to redress a personal wrong. The words "as the legal representative" means nothing more than the one having a right to recover under the statute. The purpose of section 3147 is to afford to parents as such, and in their individual right, relief not allowed at common law or by the previous statutes.

The subject matter and purpose of the statute indicate that in using the words "legal representative" the legislative intent and meaning had reference to the parties bene- fited by the rights conferred and not to the administrator or executor of a decedent. See Griswold v. Sawyer, 125 N. Y., 411, 26 N. E. Rep. 464.

As the statute expressly provides that a father "may recover not only for the loss of service of such minor child, but in addition thereto such sum for the mental pain and suffering of the parent    *    *    *    as the jury may assess," it was not necessary to specifically allege the ele- ments of damage claimed. The statute gave notice of the damages that could be recovered at the trial. See 5 Ency. Pl. & Pr. 758. Any damages that directly, naturally and necessarily result from the act complained of need not be specially alleged.    See Jacksonville Electric Co. v. Batchis, 54 Fla., 192, 44 South. Rep. 933. Mental pain and suffering of the parents directly, naturally and necessar- ily result from the wrongful death of their minor child, and the right of the father to the minor child's services being infringed by the act of the defendant, entitled the father to recover at least nominal if not substantial dam- ages for loss of such services.

In the case of South v. East & West R. R., 84 Ga. 183, 10 S. E. Rep. 602, relied on by plaintiff in error the fatal defect in the declaration was a failure to allege facts showing a right of action in the plaintiff and not a failure to allege the elements of damages. Where the elements of damages recoverable in a statutory right of action are

specifically defined in giving the right and are applicable to every case within the right given, it is not necessary to specially allege such damages since they follow as a part of the right of action, and the statute gives notice of the matters for which damages may be awarded. The amount of the damages is for the jury to determine subject to the provisions of law designed to prevent abuse of discretion.

In this case facts showing the plaintiff's right of action appear; and as the elements of recovery are defined in the statute and are applicable to every case within the right, recovery may be had under a general allegation or claim of damages. See the nature of the allegations in Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, 25 South. Rep. 338; Railroad v. Glover, 92 Ga. 132, 18 S. E. Rep. 406. The specific grounds of the demurrer to the declaration were not well taken.

The following demurrer to the evidence was interposed and overruled: "Now comes the defendant and demurs to the evidence of the plaintiff herein and admits that the evidence shows that the plaintiff at the time of the injuries complained of was the father of Alice Moseley, who would have been seventeen years old on the 20th day of February, 1908; that said Alice Moseley was killed between six and eight o'clock at night by a locomotive attached to a train of cars, the property of the Seaboard Air Line Railway, running full speed eastwardly and on a straight track at a public road crossing or highway about one mile east of Marietta, in Duval county, Florida; that said crossing is about seven miles west from Jacksonville; that there was no sign board bearing the inscription 'Look out for the cars' at said crossing; that at the time of the killing deceased was accompanied by her two sisters Minnie and May and her brother Alvin; that they were going from their father's house which was about two hundred yards south-

east of the crossing, across said crossing to the house of Mrs. Altman which was north of the track; that at the time of the accident and before said locomotive reached said crossing it had no head light burning; that no whis-tle or bell was sounded before approaching the crossing; that the hearing and sight of the deceased was good, and that her brothers and sisters each heard the rumbling of the train, but they believed that they would have time to cross the crossing before the train reached there; that the deceased's brother and sisters did not see the train, the night being cloudy and foggy, until the train was within twenty-seven to ten feet of the crossing; that Minnie Moseley called to the deceased and her brother and sisters when she saw the train about a yard and a half from her and warned them of the approach of the train; that May Moseley who was alongside of the deceased did not hear such warning and that Alvin Moseley heard some one yell; that if the deceased and Alvin and May Moseley had attempted to get off the track on the south side, they would all have been killed. That there were two trains from Baldwin to Jacksonville that night; that the one coming from Tampa, Florida, was due to arrive at Jack-sonville at 5:30, and the one from Tallahassee, Florida, was due to arrive at 7:30; that the first train was a pas-senger train and had no headlight, and was the train which killed Alice Moseley; that the second train which passed about ten minutes after the first train was a pas-senger train and had a headlight burning; that one jaw and one leg of Alice Moseley was broken; and her neck was broken and her back was broken. May Moseley was knocked off the crossing by the same train that killed her sister. The road crossing was about six or eight feet from the cattle guard, and the cattle guard was about six or eight feet wide. Miss Minnie Moseley testified that the locomotive was at the cattle guard when she first saw it;

that the three persons accompanying the deceased did not know the train was there, but did hear the rumbling of the train and knew that the train was approaching; thought it was about Marietta; that the train was not making much noise, but was running light; that Alice· Moseley's hearing and sight was good and that she understood the danger of attempting to cross a railroad track in front of a moving train; that deceased lived with her father, the plaintiff in the case; that the body of Alice Moseley lay alongside of the crossing until Mr. Gardner, the Justice of the Peace came, who afterwards held an inquest. That the deceased and her brother and sisters who were with her at the time of her death, stopped just before they went on the crossing and looked and listened for the approaching train, saw none, but heard the rumbling of one, which they thought was about Marietta.

Defendant further admits all the legal and logical deductions to be derived from the testimony."

On the evidence set out in the demurrer as shown it does not clearly appear that the death was caused by the negligence of the decedent, or that she negligently contributed to her death. The injury occurred in the running of a train, and under the statute the defendant is liable in damages "unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." Secs. 3148, 3147 Gen. Stats. The running of a train at night over a public crossing without a headlight burning on the engine is at least evidence of negligence. It does not clearly appear that the injury was caused by the negligence of the person injured, as in Seaboard Air Line R. Co. v. Barwick, 51 Fla. 304, 41 South. Rep. 70.

As there is evidence upon which the jury could legally found a verdict for the plaintiff, the court did not err in

overruling the demurrer to the evidence, or in refusing an affirmative charge for the defendant. Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 South. Rep. 195; Atlantic Coast Line Ry. Co. v. McCormick, 59 Fla. 121, 52 South. Rep. 712.

At the request of the plaintiff the court gave and the defendant excepted to the following charges:

"2. Upon proof by a preponderance of the evidence of the injury complained of in the declaration, the defendant is liable for whatever damage is alleged and proven by such preponderance of the evidence to have been done by defendant to plaintiff, unless the defendant proves by a preponderance of the evidence that its agents exercised all ordinary and reasonable care and diligence, the presumption being against the defendant.

What will constitute ordinary and reasonable diligence must necessarily vary under different circumstances.

It cannot be measured or ascertained by any fixed and inflexible standard, because the words 'ordinary and reasonable' are themselves relative terms and what, under some conditions would be ordinary and reasonable diligence might, under other conditions, amount to even gross negligence.

In this connection the word 'ordinary' is not used in its narrowest and most confined sense, but is intended to require of the defendant all the care and diligence ordinarily due from it, under like circumstances, exigencies and conditions, in like cases, strictly commensurate with the demands and exigencies of the occasion, and by the relationship that the defendant bears at the time to the party in question."

"4. It is the duty of railroad companies to give warning to travelers at railroad crossings, and in running cars in the night all means and measures of protection must be used which the highest prudence could suggest."

"5. Running a passenger train without a headlight burning, at a high rate of speed, through a populous country, and over a highway which people are accustomed to use after dark, on a dark night, is negligence as a matter of law."

"6. If you find that Alice Moseley, deceased, failed to exercise ordinary care and prudence and thereby contributed to the injury complained of, yet, if the accident was directly caused by the negligence of the, defendant, the defendant would be liable, but the damages should be diminished by the jury in proportion to the amount of negligence of which the said Alice Moseley, deceased, was guilty."

It is contended that these charges are erroneous in that the first paragraph of charge numbered two requires the railroad company to remove the statutory presumption of negligence against it by a preponderance of evidence, and that the rules of law stated by the charges are not applicable as the evidence tends to show the deceased must have known of the approaching train by its noise even though there was no headlight on the engine and the whistle was not sounded for the crossing.

The first paragraph of charge numbered two above is unlike the charge in Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, held to be somewhat confused and obscure. Here the charge is not that the presumption is against the company in determining whether the railroad company has exercised all ordinary and reasonable care as required by the statute, but that upon proof of the injury by a preponderance of the evidence, the defendant is liable "unless the defendant proves by a preponderance of the evidence that its agents exercised all ordinary and reasonable care and diligence, the presumption being against the defendant." This quoted language is in effect the same as the statutory terms "unless the company

shall make it appear" that the care and diligence were exercised. It does not require a presumption against the company to be carried into the consideration of evidence, but only that the negligence of the defendant is presumed unless removed by a preponderance of the evidence, which is no more than the statutory burden that the company shall make it appear that it was not negligent. As to what is the exercise of all ordinary reasonable care and diligence see Florida Ry. Co. v. Dorsey, 59 Fla. 260, 52 South. Rep. 963; Morris v. F. C. & P. Ry. Co., 43 Fla., 10.

Under all the facts and circumstances in evidence the other charges above quoted do not hold the defendant to too high a degree of care, and the rules of law announced therein are not clearly erroneous under the facts of this case.

As the facts and circumstances in this case do not show the injury to have resulted from the negligence of the deceased as in the Barwick case *supra,* and other similar cases, the charges requested upon this theory were properly refused. Some charges refused had previously been given in substance.

It is shown that the decedent was fatally struck by a railroad train on a public crossing. It does not appear that the decedent negligently contributed to the efficient cause of her injury. The death as stated being shown the defendant is liable in damages therefor under the statutes applicable in this case, if the negligence, carelessness or default of the defendant or its agents caused the death or unless the defendant shall make it appear that its agents exercised all ordinary and reasonable care and diligence required by law under the circumstances to avoid the injury. Secs. 3147, 3148 Gen. Stats.; Florida Ry. Co. v. Dorsey, 59 Fla. 260, 52 South. Rep. 963. There is testimony by two minor children who were a little ahead of the deceased in crossing the track, and one who

was behind and had not gotten on the track, that the engine had no headlight burning, that the night was dark, cloudy and foggy, that the train was heard before the accident occurred, but it was supposed to be some distance away, that the whistle was not blown nor the bell rung for the crossing, that before attempting to cross the track .all stopped and listened and supposed the train was some distance away, that the train was running fast and did not make much noise, and was not seen in time for the decedent to escape, she being in the act of walking across the track on a public crossing.

The duty of the railroad company and its agents to have a headlight burning on the engine drawing a rapidly moving train, and to give warning signals in approaching a public crossing on a dark foggy night is obvious and imperative. Although the testimony as to the absence of a burning headlight and the giving of warning signals in approaching the crossing is conflicting, there is testimony upon which the jury could legally find that the decedent did not proximately contribute to the efficient cause of her death, that the negligence, carelessness or default of the defendant or its agents caused the death, and also that the death as alleged being shown, the defendant had not made it appear that its agents had exercised all ordinary and reasonable care and diligence required by law under the circumstances to avoid the injury.

There is evidence to sustain the verdict, and no material errors of law or procedure appearing, the judgment is affirmed.

All concur, except SHACKLEFORD, J., who dissents.

SHACKLEFORD, J., dissenting.

I could concur in the opinion prepared by the Chief

Justice but for the fact that I have an abiding conviction that Section 3147 of the General Statutes of 1906, under which the action is brought, is clearly unconstitutional for the reason set forth in my dissenting opinion in Pensacola Electric Co. v. Soderlind, filed this day. It is true that such question is not raised in the instant case, but it is presented in that case and directly called to our attention.