Hillsborough,
Nov. 4, 1942. } No. 3358.

DENNIS J. THIBEAULT, *Adm'r*

*v.*

MAUDE E. BROWN AND JOHN W. PARFITT, *Ex'rs.*

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Louis E. Wyman orally), for the plaintiff.*

*McLane, Davis & Carleton* and *Thorp & Branch (Mr. Branch orally)*, for the defendants.

PAGE, J. The decision in *Humphreys* v. *Ash*, 90 N. H. 223, points out two methods for ascertaining the present value of the loss by death to a decedent's dependents and estate. First, it was suggested that the jury could return a general verdict for the present value after proper instructions as to the method of discounting "damages to be suffered in the future." The present worth, it was stated, "is such sum of money in hand as with a proper rate of interest compounded will yield the sum to be obtained at the conclusion of the period in contemplation." The period in contemplation depends on what the jury finds to be the future lifetime of the deceased but for the wrongful death. The means for finding the proper discount rate were also suggested. The general verdict of present worth can be reached only after the finding of three essential facts: (1) the probable earning capacity of the deceased for his dependents and for his estate, had he lived; (2) the probable length of his life but for his premature death; and (3) the proper rate of discount. Like all questions of fact, they must be found by the jury unless the parties waive their constitutional rights to trial by jury.

Recognizing the truth that, after finding these facts essential to a general verdict, the jury must still perform a complicated mathematical computation for which they might have little capacity, we suggested an alternative course that would leave the facts to be determined by the jury, while relieving them of the calculation. Since computation is a scientific process based on ascertained facts, there could be no constitutional objection to the finding of the facts by the jury, and the subsequent doing of the mathematics by the

court or an accountant named by the court as commissioner. So we said that in his discretion the Presiding Justice might require special verdicts as to the essential facts: (1) the decedent's probable expectancy of life, (2) the final amount in contemplation, by which is meant what the decedent would have produced for his dependents and his estate if he had lived out his expectancy, and (3) the proper rate of discount. If the court or the accountant then mathematically applied fact 3 to fact 2 for the period 1, the correct present worth would result and the parties would not be deprived of trial by jury. But the constitutional discretion thus assigned to the court is a discretion to have the special findings all made by the jury, not to make any of them himself.

In the instant case the jury were not asked to find a general verdict after proper instructions regarding all of the essential findings of facts and their application to the resulting verdict. Nor were they asked to find the essential facts specially. Though counsel for the plaintiff protested against this course, and took an exception, he was forced to argue to the jury in accordance with the law of the trial made by the court, on the defendants' insistence, when the plaintiff's objections were overruled. Counsel told the jury in substance not to return as damages prospective earnings of the deceased prior to the age of twenty-one. He argued that in the approximate thirty-six years he might be expected to live thereafter, the decedent might have earned and saved for his dependents and his estate the sum of $36,000. He stated that $7,000 was the statutory limit of recovery. Inadvertently he asked for "a present verdict that represents the fair present value of that capacity." There was no exception to his argument.

The court charged in substance that the argument for the plaintiff might be accepted as a statement of the law, though he did not endorse the argument for $36,000. He limited the verdict to $7,000. He added: "Consider his intelligence, health, and his position, and determine for yourselves what probably he would have done in his lifetime, after he reached the age of twenty-one, and what he might probably have saved for his estate, either by spending it for his dependents during his lifetime, or left it at his death." Nothing was said about discounting, the rate of discount, or the discounting period.

Omitting for the moment consideration of the effect of the inadvertent reference to "fair present value," which was not pertinent under the law of the trial, it may be conceded for purposes of im-

mediate discussion that the jury were asked to return a verdict covering what the decedent, but for the negligence of the defendants, would probably have earned for his dependents and his estate after attaining the age of twenty-one. That may be taken as corresponding to the second fact to be found upon a special verdict, "the final amount in contemplation," though it is to be remarked that the statutory limitation of $7,000 cannot apply to this amount, but only to the discounted verdict. The important question is whether the other necessary facts have been constitutionally found. Since the defendants took no exception to the method of submission, and in fact asked for it, the lack of a constitutional finding of either of the other two essential facts will be fatal.

The decedent's expectancy of life according to the tables, as we understand it, was 50.8 years. The tables, it is common knowledge, are based on average experience. They are some evidence of the expectancy of the deceased, but not conclusive. Though the defendants in colloquy offered to agree to the figure as conclusive, no agreement appears to have been made. The health of the boy, mentioned in argument by plaintiff's counsel and also in the instructions to the jury as bearing on the capacity to earn, was an important factor also in arriving at the period for discounting. The jury were not told to find the expectancy and report it to the court, so that the period for discounting could be known. Though they had to find it before they could determine earning capacity, nobody can know what they found. The defendants did not seek instructions in this regard and took no exception to the instructions as given.

The fact being undetermined, the court cannot constitutionally find the fact without agreement of the parties, and the parties have never agreed. The evil of a finding by the court now is very practical, even if the constitutional question were waived. Discounting must be for the same expectancy used in estimating "the final amount in contemplation." Nobody can know whether the court would now find for discounting the same expectancy that the jury used in building up the fund.

Because of the defendants' failure to secure special findings of fact that would permit the court to discount the verdict as a matter of pure mathematics, we have merely a general verdict for $4,500. Even though it be, as the defendants claim, a finding of "the final amount in contemplation," the court may not discount it because the facts for applying the discount formula have not been constitutionally found. The verdict is general. Its undiscountable

character cannot be questioned by the defendants, because they have no exception, based on a timely objection, to the lack of findings for which they themselves are to blame (*Golej* v. *Varjabedian*, 86 N. H. 244), despite fair warning at the trial.

Hitherto the case has been considered on the theory that the verdict was no more than a finding of "the final amount in contemplation." The inadvertent remark of the plaintiff's counsel about "a present verdict" of "fair present value" may, as the court and counsel for the defendants thought, not have been understood by the jury. Generally, though not specifically, the remark had the blessing of the court, and the defendant made no objection that resulted in a ruling or an exception. If the defendants had obtained a ruling and excepted, they might have had the verdict set aside; or if they had requested clarifying instructions, they might have excluded the chance that the jury thought that they were returning a verdict of present value. We should be loath to place the judgment in this case solely on the doubtful theory that the jury understood the meaning of "present worth" (*Humphreys* v. *Ash, supra*, 230), but if the theory were tenable it would lead to the same result.

As applied to the situation presented by this case, the first and second questions are answered in the negative, and the third is answered in the affirmative.

*Judgment on the verdict.*

BRANCH and BURQUE, JJ., did not sit: the others concurred.