CHARLOTTE A. CURTIS, Administratrix of the Estate of ARTHUR W. CURTIS, DECEASED, Respondent, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Corporation, Appellant, No. 42908—253 S. W. (2d) 789.

Division Two, December 8, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, January 9, 1953.

*John H. Lathrop, Sam D. Parker* and *James F. Walsh* for appellant.

*Ben W. Swofford, Robert A. Schroeder, Laurence R. Smith* and *Leonard O. Thomas* for respondent; *Swofford, Schroeder & Shankland* and *Stanley, Stanley, Schroeder, Weeks & Thomas* of counsel.

782

WESTHUES, C.—Charlotte A. Curtis, as administratrix of the estate of her husband, Arthur W. Curtis, filed this suit in the Circuit Court of Jackson County, Missouri, against the defendant A. T. & S. F., to recover damages for the death of her husband. The suit was based on the Federal Employers' Liability Act. It was alleged that Curtis came to his death while on duty in defendant's yards at Dodge City, Kansas. A trial resulted in a verdict for plaintiff in the sum of $60,000. From the judgment entered on the verdict, defendant appealed.

The negligence charged in the petition was that the defendant failed to furnish a safe place to work. Defendant, in its brief, says the court erred in submitting the case to a jury because plaintiff failed to make a submissible case. Defendant urges further that three instructions given by the court were erroneous; that error was committed in admitting in evidence an exhibit which was a report of a doctor's examination of Curtis made two years prior to the date when he came to his death; and that the verdict is excessive.

The evidence discloses the following: Curtis was a freight conductor. On October 22, 1949, he was in charge of freight [791] train No. 88, eastbound from Syracuse, Kansas. Its destination was Dodge City. The train entered the Dodge City yards at about 6:15 P. M. (C.S.T.) on track No. 6. Curtis and a brakeman named George were in the caboose at the rear of the train. When the caboose was about 450 feet east of the depot, Curtis got off on the north side and walked south to track No. 7 and watched his train pull into the freight yards east of the depot. A train of about 17 cars carrying mail, baggage, and passengers referred to as No. "Second 8" eastbound entered the yards about 6:30 P.M. on track No. 3. This train was to stop with the engine over a service pit located about 500 feet east of the depot building. An employee of the defendant was at the pit to service the engine. This train stopped before it reached the pit and the employee at the pit went to the point where the engine was to see why the train stopped. It was discovered that Curtis was lying north of track No. 3 at the second car behind the engine; his legs were at the rail and his head pointed in a northeast direction. No one had seen Curtis from the time George saw him on track No. 7 until Curtis was discovered lying north of track 3. He died about five hours later at a hospital.

The defendant's property at Dodge City in so far as material in this case was laid out about as follows: A plat shows that a building about 330 feet long marked Depot, Harvey House and Offices was located north of the tracks. The tracks running generally in an easterly and westerly direction were numbered from 1 to 8. Between tracks 1 and 2 and between tracks 2 and 3 there were platforms constructed of brick. Each platform was about 1000 feet in length and was used by passengers and by mail, baggage and express trucks. About 230 feet east of the depot building there were three valve boxes buried in the platform and covered with metal covers flush with the platform. These were in line north and south, with the one furthest to the south located immediately north of track 3. Due south thereof and between tracks 3 and 4 was a concrete box covering a manhole 4 feet square and about 6 or 7 inches above the surface. About 50 feet north and east of this concrete box between tracks 1 and 2 was a light pole; another light pole was located between tracks 2 and 3 about 160 feet east of the concrete box.

When freight train No. 88, in charge of Curtis, entered the yards, a string of about 25 freight cars was standing coupled on track 4. The center of this string of cars was at the concrete box north of track 4 and at this point there was a coupling. Curtis got off the caboose south of this concrete box. It was his duty to go to the depot building to the registry room and register in his freight train and deliver waybills for his cargo. When Curtis was found, he was lying partially on the north rail of track 3, due north of this coupling

between two cars standing on track 4 and north of this concrete box. All witnesses testified it was dark or about dark at the time and that the floodlights on the poles in the yards were not on. Witnesses for plaintiff who were employees of the defendant testified that it was a custom of railroad employees, including conductors, to "swing" through in between cars when desiring to go north to the depot from the point where Curtis left his train. By "swinging" through, they meant climbing over the coupling between cars, getting hold of the handholds on the cars and swinging off to the ground.

It was plaintiff's theory that Curtis attempted to do this and stumbled over the concrete box rendering him unconscious and unable to move. The evidence justifies the assertion that it was about 10 minutes after Curtis was last seen until he was found injured. His injuries were best described by Dr. R. G. Klein, the only witness for the defendant. Dr. Klein treated Curtis at the hospital; his testimony was as follows:

"A. I would say that he was in a semiconscious condition. He would answer you but not intelligibly because he was in a great deal of pain. His right leg was very badly mangled and lacerated, which included both soft tissues and bone, up to the knee joint.

"Q. Was his right foot missing?

"A. The right foot I think was missing. [792] I believe it was because it was all shattered and macerated.

"Q. Do you have your records there to refresh your recollection about your original examination of him there at the hospital?

"A. Yes. My record shows laceration and torn muscles and bones of the right leg, including the knee, and with a fracture to the left hip, the right forearm, and possible fracture of the skull.

\* \* \* \* \* \*

"Q. And by basal skull fracture you mean a fracture of the skull at the back?

"A. No, right at the base.

"Q. Wouldn't that be at the front or back?

"A. It could lead into the front or into the back part, but there is a floor of the skull, and that is what we call the base.

"Q. Somewhere around the floor of the skull, which runs through your temples in the average individual?

"A. That's right."

Two witnesses testified that when they saw Curtis immediately after he was struck by the train, they saw dried or coagulated blood on his face. A doctor testified that if that were true, the injury causing the bleeding must have been inflicted more than two minutes before; that blood does not begin to coagulate in less time. A pool of blood was found a few feet west of where Curtis was found while

another pool of blood was found where the body was lying. Had Curtis not been delayed, he could have been to the registry room before Second 8 arrived at the depot. The brakeman George who stayed with train No. 88 until it was delivered in the east yards walked to the registry room and was entering the office when Second 8 passed the depot. Curtis did not get to the registry office. Waybills which he intended to deliver were found lying near his body.

The defendant contends the evidence is insufficient to sustain the verdict. Since no eyewitnesses testified, the case depends on circumstantial evidence. We may state here that the members of the crew of train Second 8 did not testify. The record does not show what they saw or knew about the occurrence.

■ As to negligence on the part of the defendant, the evidence was sufficient to justify a conclusion that Curtis was not furnished a reasonably safe place to work. We say this fully appreciating that in all railroad yards there exist certain elements of danger. All of the employees of the defendant who were witnesses testified that at the time of the accident it was dark and that the lights in the yards were not on. The concrete box 4 feet square between tracks 3 and 4 created a hazard. The evidence justified the inference that the reason for constructing the box 6 or 7 inches above the surface was that if and when a platform were built between tracks 3 and 4, the top of this concrete box would be flush with the surface of the platform. The combination of having this obstruction between the tracks and darkness justified a finding by a jury that it created an unsafe place to work and negligence on the part of the defendant. Luthy v. Terminal R. Assn. of St. Louis, Mo., 243 S. W. 2d 332, l. c. 335.

■ The next question is, did the darkness and the concrete box contribute to the injury and death of Curtis? Our answer is that a jury was justified in saying they did contribute. Defendant in its brief says that the evidence does not show whether Curtis walked around the string of cars standing on track 4, either to the east or west, whether he climbed over a car, or whether he went in between two cars at the point where the concrete box was located. The most reasonable inference to be drawn from the evidence is that Curtis did go in between the cars. The evidence was that railroad employees frequently went through between cars in circumstances similar to those confronting Curtis on the night in question. Had Curtis walked around the cars, he would have had no occasion to have been where he was injured. Climbing over a car required much more effort than to swing in between two cars. The circumstances justified the inference that Curtis did go in between two cars and that the concrete box was directly [793] in front of or to the north of the opening. Had Curtis not been delayed, he would have been at his destination, the registry office, a number of minutes before Second 8 passed the depot. The brakeman George passed near the

point where Curtis was found a minute or so before he was found. He testified he did not see Curtis. The employee at the service pit who was facing west watching Second 8 approach was looking toward where Curtis was found and he did not see him. Had Curtis been on his feet moving about, the man at the pit could have seen him by the headlight of the engine. When this man walked to the engine to determine the reason for its premature stop, Curtis had been discovered. A number of the men present had flashlights which they used at the time indicating that it was dark. The dried or coagulated blood on the face of Curtis, as well as all the other circumstances above stated, tends to prove that Curtis was lying down unable to move as Second 8 approached. The medical evidence was that there were bruises on Curtis' face and that his skull was fractured at its base. The coagulated blood indicated that Curtis had been injured before the train struck him.

Our conclusion is that the evidence was sufficient to support the verdict of the jury as to the liability of the defendant. Timmerman v. Terminal R.R. Ass'n of St. Louis, 362 Mo. 280, 241 S. W. (2d) 477, 1. c. 482(1); Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740. In a recent case, Winters v. Terminal R. R. Ass'n of St. Louis, No. 43116, 363 Mo. 606, 252 S.W. (2d) 380, decided November 10, 1952, in speaking on the subject of whether the evidence was sufficient to justify submission of liability to a jury, we said:

"But the burden is upon the plaintiff to present probative evidence of facts from which negligence and proximate cause may be reasonably inferred. Tennant v. Peoria & Pekin Union R. Co., 321 U.S. 29, 64 S. Ct. 409, 88 L. Ed. 520. And the twofold problem presented here is first, whether the requisite and specifically hypothesized facts constituting negligence and proximate cause are a fair and reasonably permissible inference from all the facts and circumstances and, second, the ascertainment of the appropriate rule or tests this court is obliged to apply in determining the presence or absence of the sufficiently probative circumstance. For, once the circumstance sufficient to support the inference appears or can be found in the evidence, the ultimate issue must be submitted to the jury and this court as well as the trial court must necessarily abide the verdict rendered by the jury. Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, 90 L. Ed. 916; Tennant v. Peoria & Pekin Union R. Co., supra." Applying that rule to the evidence in this case, we must rule that a case for a jury was made. We fail to discover any ruling in Nance v. Atchison, T. & S. F. Ry. Co., 360 Mo. 980, 232 S. W. (2d) 547, Carnahan v. Missouri-Kansas-Texas R. Co., 338 Mo. 23, 88 S. W. (2d) 1027, and Hartgrove v. Chicago, B. & Q. R. Co., 358 Mo. 971, 218 S. W. (2d) 557, cited by the defendant, contrary to our conclusion. In fact, the Hartgrove case could well have been cited in support of our ruling.

■ Defendant complains of instruction 1. What we have said disposed of most of the points briefed. We desire to call attention to a few specific objections made. Defendant says the instruction submitted matters not supported by the evidence. For example, that Curtis fell ''So that part of his body was immediately adjacent to or upon the north rail of Track 3.'' We think the evidence amply supported the statement made. Curtis was found adjacent to track 3; one of his feet had been mashed on the north rail. A pool of blood was found near track 3 and north thereof and another a few feet west of where Curtis was found indicating that he had been lying there some time before he was struck by the train. Again the defendant says that the instruction submitted the question of whether Curtis fell and ''That as a result thereof he was injured and rendered unconscious and unable to extricate himself from said position.'' The pool of blood indicated Curtis had been injured; that fact that he remained lying partially on track 3 [794] and permitted a train to strike him was evidence from which it could be inferred that he was injured to such an extent that he could not move. We must rule the points against the defendant.

Again defendant says that instruction 1 submitted as a charge of negligence the fact that 25 cars were standing on track 4. To this we cannot agree. The instruction did refer to the string of cars on track 4; also that freight train No. 88 of which Curtis was the conductor and train Second 8 entered the yards. But the reference to those facts was for the purpose of presenting to the jury the full picture of the situation. As to negligence, the instruction did submit the existence of the concrete box and in connection therewith the question of whether the box could have been constructed so as to be flush with the surface of the ground. Further, the question of the failure to have the lights on was submitted. It was for the jury to say whether the surrounding circumstances rendered the place unreasonably unsafe for Curtis. The questions of whether the defendant was negligent and whether such negligence caused injury to Curtis were properly submitted to the jury. The instruction was not subject to the criticism leveled against it by the defendant.

■ Defendant complains of instruction 6 which in substance informed the jury that the suit was based on the Federal Employers' Liability Act and concluded by advising the jury that the deceased ''shall not be held to have assumed the risks of his employment.'' Defendant says this instruction injected a foreign issue into the case. The cases cited in support of defendant's contention are cases such as Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809, where the court held it was error for the court to give an instruction for the defendant which injected contributory negligence in a humanitarian case as a defense. Such cases are not in point.

We have had cases similar to the one now before us. See Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S. W. (2d) 163, l. c. 168 (7)(8), where we held that such an instruction did not inject a foreign issue into the case. In Abernathy v. St. Louis-San Francisco Ry. Co., Mo., 237 S. W. (2d) 161, l. c. 163 (2), we held that such an instruction tended to keep a foreign issue out of the case.

Plaintiff's principal instruction authorized plaintiff's verdict only if the jury found deceased came to his death through the negligence of the defendant. A defendant's instruction told the jury that the burden was on the plaintiff to prove her case; that the defendant under the Federal Act was not an insurer of the safety of its employees; also that the mere fact Curtis was injured did not authorize a verdict for plaintiff. In the circumstances, we hold the giving of instruction 6 was not prejudicially erroneous.

■ Defendant complains of instruction 3 in which the court instructed the jury that the law presumed Arthur W. Curtis was in the exercise of ordinary care at the time and place mentioned in evidence in the absence of evidence to the contrary. That such a presumption exists in death cases where there are no eyewitnesses to the cause of death is conceded. Thompson v. St. Louis-San Francisco Ry. Co., 334 Mo. 958, 69 S. W. (2d) 936, l. c. 945, 946 (16-21) last paragraph; Burtch v. Wabash Ry. Co., Mo., 236 S. W. 338, l. c. 340 (3); 25 C.J.S. 1207, Sec. 80 b(1). Defendant says that even though such a presumption was present in the case, the court erred in instructing on the existence of the presumption. Instructions of like nature have been approved by this court as well as the Federal Courts. Chicago & N.W. R. Co. v. Grauel, 160 F. (2d) 820, l. c. 825 (3,4); Pyle v. University City, Mo. App., 279 S. W. 217, l. c. 218 (1,2).

■ Plaintiff introduced in evidence a report of doctors employed by the defendant showing that Curtis, the deceased, had been examined for the purpose of determining whether he was physically fit for railroad duty. Defendant says that this report was hearsay and should not have been admitted. The purpose of introducing the report in evidence was to show the good health of Curtis prior to his injury. The report disclosed the general health of Curtis [795] and also a certificate signed by one of the examiners stating that Curtis was qualified for duty as a conductor. This report was in defendant's possession and was made at defendant's request. It was the property of the defendant. The report showed the defendant considered Curtis in good health when the report was made. We rule the report was admissible. It was a record kept by the defendant as to the condition of Curtis' health. Anderson v. Metropolitan Life Ins. Co., Mo. App., 96 S. W. (2d) 631, l. c. 633 (2); Lebrun v. Boston & Maine Railroad, 83 N. H. 293, 142 Atl. 128, l. c. 133 (6-9) (10-12); 20 Am. Jur. 825, Sec. 977.

Defendant, in support of its theory the report was inadmissible, cited Wallingford v. Terminal R. R. Ass'n of St. Louis, 337 Mo. 1147, 88 S.W. (2d) 361, 1. c. 365 (2-4). In that case the plaintiff offered evidence given at a coroner's inquest. This court held the evidence was not admissible. The witness was present in court and testified at the trial. This court held that if the witness had contradicted himself, the evidence given at the coroner's inquest by the witness could have been used for impeachment purposes. Such cases do not rule the point under consideration.

The last point briefed is the question whether the verdict of $60,000 is excessive. The evidence was that deceased was 46 years of age. His only dependents were his wife, 35 years old, and a son, 11 years old. During the last twelve months of his life, Curtis earned $4,755. His life expectancy was 25.07 years. Curtis lived only a few hours after he was injured. A doctor who treated him at the hospital testified Curtis was semiconscious, was incoherent in his speech, and that he suffered a great deal of pain. We are of the opinion that the evidence did not justify a verdict for $60,000.

Plaintiff cited Dodd v. Missouri-Kansas-Texas R. Co., 354 Mo. 1205, 193 S.W. (2d) 905; Bolino v. Illinois Terminal R. Co., 355 Mo. 1236, 200 S. W. (2d) 352; and Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S. W. (2d) 568. In the Dodd case, a verdict for $20,000 was upheld. In the Bolino case a judgment for $13,500 was affirmed. These were death cases but the circumstances and facts proven were very different from those in the case before us. In the Dodd case we reviewed and considered the various elements to be taken into consideration in determining the amount of damages. In that respect the case is helpful. The Joice case, supra, was a personal injury suit and is not much aid to us in this case. This court, in Ford v. Louisville & N. R. Co., supra, 196 S. W. (2d) 1. c. 170 (13), considered the question of the amount of a verdict in a death case under the F.E.L.A. The deceased was 51 years old. His widow was of the same age and there were seven minor children. Ford earned about $1,857 per year as a head brakeman. He also earned some money as a salesman. There was a judgment for $45,000. This court ordered a remittitur of $15,000. In Mooney v. Terminal R. Ass'n, 353 Mo. 1080, 186 S. W. (2d) 450, a death case, we affirmed a judgment for $35,000 as damages and $10,000 for pain and suffering. The deceased was 30 years old. He left a widow, age 30, and two small children, one 4 years old and the other 6 months old. Deceased's wage was considered about $200 per month.

Taking all of the elements and factors into consideration, we deem that the evidence in this case does not justify a judgment of more than $40,000. Sheehan v. Terminal R. Ass'n of St. Louis, 344 Mo. 586, 127 S. W. (2d) 657.

Therefore, it is ordered that if the plaintiff will within 15 days enter a remittitur in the sum of $20,000 as of the date of judgment, then the judgment will be affirmed for $40,000 as of the date of the original judgment. Otherwise, the judgment will be reversed and remanded.

It is so ordered. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.