Walter J. Muir, Administrator of the Estate of Vern Walter Gifford, Deceased,

*Plaintiff and Respondent*

vs.

Earl D. Haggerty and Brandley-Neff Sheep Company, a corporation,

*Defendants and Appellants.*

(No. 2773; September 10th, 1957; 314 Pac. (2d) 948.)

For the defendants and appellants the cause was submitted upon the brief and also oral argument of Edward E. Murane of Murane & Bostwick of Casper, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of W. A. Muir of Rock Springs, Wyoming, and W. J. Muir of Cheyenne, Wyoming, and oral argument by Mr. W. A. Muir.

Heard before Blume, C.J. and Harnsberger and Parker, J.J.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action for wrongful death brought under the provisions of §§ 3-403, 3-404, Wyoming Compiled Statutes 1945, the prototype of which is Lord Campbell's Act. Plaintiff alleged that Vern Walter Gifford was negligently killed by the defendant Haggerty in a collision on Highway No. 30 and that said Gifford died on May 1, 1955, as a result of such negligence. After trial of the case before the court without a jury, judgment for general damages was rendered against the defendants in the sum of $60,000. A further judgment was rendered against the defendants in the sum of $1,629.88 for hospital, medical and doctor's expenses. And a further judgment was rendered against the defendants in the sum of $1,225 for the automobile of the deceased. From that judgment the defendants have appealed to this court.

At the beginning of the trial of this case, the defendants through their attorney acknowledged liability for the death of deceased, contesting only the question of the amount of damages to be allowed to the administrator of the estate of Vern Walter Gifford, deceased. However, during the course of the trial, question arose as to the sufficiency of the pleadings in the case and the offered amendments thereto and the questions now

before this court on this appeal relate to such matters and also whether or not the judgment in this case is excessive. We shall discuss these questions in that order.

1. Pleadings and Amendments Thereto.

In the amended petition filed by the plaintiff, after alleging that the deceased left surviving him his wife and three children and that the deceased was killed by the negligence of defendant Haggerty, originally stated further in paragraph 6 as follows:

"That at the time of his death, the said Vern Walter Gifford was an able-bodied man of the age of forty-four (44) years, or thereabouts, and was regularly employed and engaged in his occupation, as a salesman, and was at the time of his death, earning approximately Seventy-six Hundred ($7,600.00) Dollars per year; that the surviving widow of deceased, and the surviving minor children of deceased, his heirs at law, by reason of the death of the said Vern Walter Gifford, deceased, as aforesaid, have suffered and sustained the loss of his comfort, care, advice and society; that by reason of the death of the said Vern Walter Gifford, deceased, which was caused by, and was the direct and proximate result of the negligence, carelessness and recklessness of said defendants, as hereinbefore alleged, said heirs at law of said decedent, have suffered and sustained damages in the sum of Ninety-three Thousand Two Hundred Fifty ($93,250.00) Dollars."

Mrs. Gifford, the surviving widow, after testifying to the income of deceased in 1952, stated that the net income "was used for ourselves and our family, to support them." Later she testified substantially the same matter. Counsel for defendants interrupted and stated: "At this time I would like to raise the question as to the pleadings in the plantiff's petition. There is no allegation at all that the plaintiffs received anything

or lost anything out of the decedent's earnings." The court stated: "I will take it under advisement." Later during the trial the plaintiff twice moved to amend the petition as to the damages by alleging "that said heirs received for their support and maintenance the sum of $5,000." And finally at the end of the trial the plaintiff moved to amend the petition to conform to the proof by inserting the following:

"That said heirs received for their support and maintenance the sum of Five Thousand ($5,000.00) Dollars per annum from the aforesaid earnings from said decedent, during his lifetime; that the heirs, surviving widow and minor children, the survivors of decedent, failed or will fail, in the future, by reason of the death of said decedent, to receive out of decedent's earnings, the sum of Five Thousand ($5,000.00) Dollars per annum."

The court permitted the amendment. Counsel for defendants now claim that the court abused its discretion in allowing the amendment after the objection made as mentioned above. That is the direct question before us.

It appears to be the contention of counsel for defendants that it is essential that a petition, in a case such as before us in order to set forth a cause of action, must set forth the elements of damages sustained by reason of the death of deceased; that the loss by reason of comfort and society of the deceased was sufficiently alleged, but the loss incurred by the survivors of future earnings of the deceased was not sufficiently set forth in the amended petition. Prior to 1939 our statute provided that: "In every such case (as before us), the jury shall give such damages as they shall deem fair and just." The statute was amended in 1939 and added the provision: "The court or jury may con-

sider, as elements of damages, the amount the survivors failed or will fail, by reason of the death, to receive out of decedent's earnings, and further the court or jury may add, as an element of damage, a reasonable sum for the loss of the comfort, care, advice and society of the decedent." § 3-404 W.C.S. 1945. The statute does not state that these elements must be pleaded.

In Seaboard Air Line Ry. v. Moseley, 60 Fla. 186, 53 So. 718, the court held that when the statute specifies the elements of damage that gives sufficient notice to defendant and it is not necessary to allege them, but a general claim of damages is sufficient. Such general claim appears in the amended petition herein. We have before us a case involving a claim for the death of a husband and a father. The law presumes that he should support them and that his death would be a loss to them. In 17 C.J. 1292, it is stated:

"While it is always necessary to allege or state facts from which pecuniary loss or damage to the beneficiaries affirmatively appears, is implied, or is presumed by law, the particular items or circumstances affecting such damage need not be set forth, and a general averment of damages is usually sufficient * * *."

Cases from fifteen jurisdictions are cited. To the same effect see 25 C.J.S. § 74, p. 1195.

In Tiffany, Death by Wrongful Act, 2d Ed., § 184, p. 416, the author, referring to some jurisdictions, states:

"In order to allow proof of damages in these jurisdictions, it appears to be sufficient to allege that the beneficiaries have sustained damages in a certain amount."

The author cites cases from New York, Indiana, Min-

nesota, Vermont, California, Florida, Kansas, and Virginia. The amended petition herein complies with this statement. See further Smith v. Odd Fellows Bldg. Ass'n, 46 Nev. 48, 205 P. 796, 800, 23 A.L.R. 38. We hesitate to disagree with what appears to be the great weight of authority.

We think, however, that it is fairer to the defendant that, if requested, the particulars of a claim should appear in order to give the latter an opportunity to properly defend a case. In Chinery v. Brooklyn Union Gas Co., 258 App.Div. 727, 14 N.Y.S.2d 862, 863, the court stated that the "defendant is entitled to know what the plaintiffs claim as the basis for the amount of damages demanded." It is stated in 25 C.J.S. § 78, p. 1202, that under some statutes, including Lord Campbell's act, a bill of particulars must be furnished when demanded by the defendant. See also Tiffany, Death by Wrongful Act, 2d Ed., § 185. We think this a fair rule and should apply in the absence of a statute. What may be done by a bill of particulars may be done, of course, by an allegation in the petition. In the case at bar, however, no demand was made for a bill of particulars, nor was a motion made for a more specific statement in the amended petition. We must conclude, therefore, that the testimony relating to the loss sustained by reason of the future loss of the earnings of the decedent was properly admitted, since no amendment was necessary in the absence of a demand therefor. The actual making thereof could not be prejudicial and the court could not, accordingly, be said to have abused its discretion.

II. Excessive Judgment.

Counsel for the defendants does not complain of the judgment given for the value of the automobile, nor

of that given for funeral expenses, but complains that the judgment for general damages of $60,000 is excessive. It appears that the deceased was 44 to 45 years of age when he died, with a life expectancy of 25 to 26 years. He was in good health. He left surviving him his wife, 42 years of age, and three daughters, 13, 8 and 3 years of age. In 1952 and 1953, deceased conducted a clothing store. In 1952, the income of deceased and his wife was $7,854.70, which included $150 earned by the wife. The income tax was $949.14. In 1953, their income was $7,943.92 which included $445.50 earned by the wife. The income tax was $922.-08. In 1954, their adjusted gross income was $5,123.29, with $421.10 income tax. During 1954 to the time of his death, the deceased worked as a traveling salesman for Hilb & Company of Denver, Colorado, selling infants' and ladies' apparel and toys. He received $500 per month for the first three months of 1954, and a guaranteed income of $700 per month thereafter. He had to pay his own expenses which, according to the witness Holzwarth, were $3,000 to $3,100 per annum, leaving approximately $5,400. There is some evidence that deceased had prospects of a greater income in the future. Some of the net income was doubtless used by the deceased personally, and that amount must be eliminated from any basis considered in a case. There is no testimony on that point and the matter has not been argued. Furthermore the income tax must be considered. That, if he had lived, would have left, in the absence of more particular evidence, approximately $5,000 to be used by the members of his family.

Counsel for the defendants has presented us with tables to show that the amount of $60,000 allowed by the trial court is excessive. The first of these tables is, as counsel states, a "Computation, over period of 25 years, showing present value of a lump sum pay-

ment of $60,000 invested at 4½% interest, with distribution to the heirs each year of the sum of $2,400.00 plus accumulated interest annually." In the first column the number of years from 1 to 25 is set out; in the second column the sum of $2,400 opposite each year; in the third column is the computed interest for each of the years, this interest increasing every year, so that for the 25 years the interest is shown in the sum of $51,766.32. This interest added to $60,000 is a total of $111,766.32, which, counsel says, is over and above the amount of some $93,000 asked in the petition.

After puzzling for some time over the tables, we discovered the basis of the computation. According to table 1, each of the items of $2,400 would be invested and reinvested, and nothing would be consumed. These tables do not, as claimed by counsel, set out the present value of future earnings, but the future value of $2,400 invested each year and reinvested up to and including 25 years. Nothing is left for consumption by the heirs. Even assuming that the court meant to give the heirs $2,400 each year, that amount evidently was not intended for investment, but for consumption. The heirs need something to live on. It is quite clear that if the heirs were allowed $2,400 a year, they would consume that amount. That would then, after the first year, leave $57,600. The next year there would be left only $55,200. In ten years $24,000 would be consumed; in 20 years $48,000. In 25 years nothing would be left.

The interest would decrease each year instead of increasing. The tables submitted to us are not made on any basis of realism, and we cannot accept them.

The court on the basis of the evidence had a right to find that the life expectancy of the deceased was at

least 25 years; and that, if living, he would have contributed to the members of his family the sum of approximately $5,000 per annum. So we must find the present value of approximately $5,000 per annum earned and contributed for a period of 25 years, or a total of $125,000. To find such present value, we must of course discount the future earnings or contributions. Various rules of present worth of future payments or earnings have been applied. See under "Present Worth" in Words and Phrases. The tables at pp. 342 to 345, inclusive, in 5 Wyoming Compiled Statutes 1945, purport to give such present value of future earnings or contributions. Using the annuity table at page 342, and the discount rate of 4%, we find the present value of future contributions of $5,000 per annum by a man 45 years old to be $69,285 ($5,000 x 13.857). If we use 4½%, the amount would be about $65,492. The tables at pp. 344,345, purport in column 4 to give the present value of $1 per annum for N years. If we use the 4½% table we find that the present value of the foregoing contributions for 25 years is $74,141 ($5,000 x 14.8282). If we use the 4% table, the amount would be larger. These tables appear to be based on the so-called compound interest, that is to say the discounts taken for the various years are invested and kept invested. See Thibeault v. Brown, 92 N.H. 235, 29 A.2d 461.

A conservative method of finding the present worth of future payments is by taking a straight discount, proportionate to the number of years. This method is approved, or at least substantially approved, in the case of Rivers v. Bay City Traction & Electric Co., 164 Mich. 696, 131 N.W. 86, where illustrations are given. If we then take a discount of 4% of the annual earnings and contributions of $5,000 for the period of 25 years, we have the following table:

| Number of Years | Discount | Present Value |
|---|---|---|
| 1 | 4% | $ 4,800 |
| 2 | 8% | 4,600 |
| 3 | 12% | 4,400 |
| 4 | 16% | 4,200 |
| 5 | 20% | 4,000 |
| 6 | 24% | 3,800 |
| 7 | 28% | 3,600 |
| 8 | 32% | 3,400 |
| 9 | 36% | 3,200 |
| 10 | 40% | 3,000 |
| 11 | 44% | 2,800 |
| 12 | 48% | 2,600 |
| 13 | 52% | 2,400 |
| 14 | 56% | 2,200 |
| 15 | 60% | 2,000 |
| 16 | 64% | 1,800 |
| 17 | 68% | 1,600 |
| 18 | 72% | 1,400 |
| 19 | 76% | 1,200 |
| 20 | 80% | 1,000 |
| 21 | 84% | 800 |
| 22 | 88% | 600 |
| 23 | 92% | 400 |
| 24 | 96% | 200 |
| 25 | 100% | -------- |

$60,000

The result is based on the payment of $5,000 per annum at the end of each year. In the case at bar the deceased was paid monthly at the end of each month. So the discounts would be less than figured above. In addition to this the court had the power to assess an additional amount for the loss of society, care and advice. And while the foregoing statements as to life expectancy and loss of future earnings and contribu-

tions are not to be considered as conclusive (See Allendorf v. Elgin, Joliet & Eastern Railway Co., 8 Ill.2d 164, 133 N.E.2d 288), by reason of the uncertainty of life and of other factors, we cannot say that the judgment herein is not supported by the evidence, and hence cannot say that it is excessive.

The writer of this opinion, speaking personally, wants to add a word for what it is worth, if anything. It is hard to know what verdict or judgment is reasonable in this day of a "fifty cent dollar". The judgment of $60,000 is the highest ever entered in this state in an action such as before us. Some verdicts, or judgments have been rendered in the last ten years running into breath-taking figures, and at times reduced by the court, the highest being $400,000. O'Toole v. United States, 3 Cir., 242 F.2d 308. See Sixth Decennial Digest, Death, § 99, and subsequent cases. They give warning that if verdicts or judgments are constantly increased, the amount of insurance ordinarily carried should be doubled, tripled or increased fourfold or more. Whether society wants to bear that burden in favor of some individuals is not a question primarily for this court. In some states the legislature has, or had limited the amount recoverable in actions for causing death. In some states, as in South Dakota, the amount is $10,000. The legislature in this state cannot now limit the amount. Article 10, § 4, Constitution of Wyoming. Formerly the amount recoverable was $5,000. So the burden of moderating the amount if necessary falls on the courts, which is always a delicate matter. The nearest case in point that the writer had found is Curtis v. Atchison, T. & S. F. Ry. Co., 1952, 363 Mo. 779, 253 S.W.2d 789. The verdict in that case was for $60,000. The deceased was 46 years of age, in good health, earning $4,755 the last year of his life. He left a wife and one child. The court re-

duced the judgment to $40,000. In Soreide v. Vilas & Company, 1956, Iowa, 78 N.W.2d 41, the deceased was 33 years old, with a life expectancy of 33 years, in good health, married and had one child, earning $468 a month. The verdict was for $50,000. The court, remarking that it was the highest rendered in that state, reduced the judgment to $37,500. If these cases are to serve as a model, the judgment in the case at bar is somewhat too high. But, of course, an appellate court must leave the amount to be allowed largely to the sound judgment of the jury or to the trial court. Hence the writer hesitates to say that the judgment in the case at bar should be disturbed.

Affirmed.