JEWELL M. SCHWARTZ, Administratrix of the Estate of EDMUND J. SCHWARTZ, Deceased, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, Appellant, No. 44261—275 S.W. (2d) 236.

Division Two, January 10, 1955.

Motion for Rehearing, to Modify Opinion or to Transfer to Banc Overruled in Per Curiam Opinion Filed, February 14, 1955.

*Richard S. Righter, Robert D. Youle, James F. Walsh* and *Lynn M. Ewing* for appellant.

18

*Sam R. Gardner* and *Jo B. Gardner* for respondent.

[236]   WESTHUES, C.—This is a suit filed by plaintiff Jewell M. Schwartz as administratrix of the estate of Edmund J. Schwartz, her husband, deceased, to recover damages for his death. A trial by jury resulted in a verdict and judgment for plaintiff in the sum of $22,500. Defendant appealed.

Plaintiff's cause of action was based on the Federal Employers' Liability Act. Plaintiff's husband lost his life on August 27, 1952, when he was cutting weeds and brush on defendant's right of way

in Vernon County, Missouri. The immediate cause of death was that a tractor Schwartz was using in mowing the weeds turned over and trapped him thereunder.

Plaintiff's case was submitted to a jury on failure of the defendant to furnish Schwartz a safe place in which to work; failure to warn of the dangerous condition [237] of the ground by reason of the contour of the ground and the guy wires on the right of way; and failure to provide a helper or guide to assist in the work.

The defendant's principal point of defense on this appeal is, as it was at the trial, that Schwartz was not an employee of the defendant, but was an independent contractor. Further, if he was an employee, plaintiff's evidence was insufficient to sustain a finding that defendant failed to furnish a safe place to work.

The evidence showed the following: Schwartz was a farmer living near Richards, Missouri. In 1951, he entered into a contract with the defendant Railway Company to mow weeds or brush on the railroad right of way. The contract provided that Schwartz was to use his own tractor and mowing equipment at a stipulated price per hour. In July, 1952, a similar contract was executed whereby Schwartz agreed to mow weeds and brush on defendant's right of way by use of his own tractor and mowing machines at $3 per hour. In August, the section foreman notified Schwartz that mowing was to begin August 11. Under the contract Schwartz had the right to work any number of hours on any day he chose. Plaintiff testified that on Sunday, August 10, her husband began the work of mowing and put in a few hours' work on that day. On the morning of August 27, 1952, plaintiff took her husband in their automobile to a road crossing south of the Marmaton River, where his equipment was then located, to commence his work for the day. It was understood that plaintiff was to meet her husband at this crossing at 7:00 P.M. Mrs. Schwartz returned to the crossing and waited some time but her husband failed to show up. Plaintiff became alarmed and notified the section foreman and some of her friends. A search was made and Schwartz was found dead under the tractor which had turned upside down. Witnesses testified that the tractor had turned over near a guy wire which was anchored in the ground. At this point where the tractor turned over, there was an embankment upon which the railroad tracks were located. At the spot where the guy wire was anchored in the ground, there was a level space and on the lower side of the point where the wire entered the ground, it was level for about 3 feet. It is plaintiff's theory that Schwartz drove the tractor onto this level space where it struck the guy wire and then turned over, the 3-foot space not being of sufficient width for the tractor to pass. The slope from the top of the embankment down to the bottom was rather steep. It is also plaintiff's theory that the lower portion of the guy wire was hidden from view by the

high weeds and brush. It is plaintiff's contention that the insufficient level space below the guy wire for the tractor to pass the wire itself plus the fact that it (the guy wire) could not be seen rendered the place unsafe for Schwartz; that defendant should have notified Schwartz of the danger or have sent a guide with him for the purpose of pointing out the danger. It was in evidence that a great deal of the space along the embankment was uneven and rough.

The Federal Employers' Libility Act, upon which plaintiff based her claim, eliminated from the law the defense of "contributory negligence." The plea of "assumption of risk" was eliminated to the extent that an employer may not escape liability where negligence on his part in whole or in part contributed to the injury. Tiller v. Atlantic Coast Line R. Co., 143 A.L.R. 967, 318 U. S. 54. However, to establish liability, a plaintiff is required to produce evidence from which negligence may be inferred by a jury. In this case, plaintiff was required to produce evidence from which it could be inferred that the defendant was in some degree negligent in not furnishing plaintiff a safe place in which to work. Many hazards are encountered by employees in the industrial world that no amount of care or foresight can avoid. Apropos of this, note the following taken from the Tiller case, supra, 143 A.L.R. l.c. 975, 976, where Justice Frankfurter, in his concurring opinion, said: "Industrial enterprise entails, for all those engaged in it, certain hazards to life and limb which [238] no amount of care on the part of the employer can avoid. In denying recovery to an employee injured as a result of exposure to such a hazard, where the employer has in no sense been negligent or derelict in the duty owed to his employees, courts have often said that the employee 'assumed the risk.' Here the phrase 'assumption of risk' is used simply to convey the idea that the employer was not at fault and therefore not liable."

In the case before us, Schwartz was employed to mow weeds and brush with his own mowing equipment upon defendant's right of way. The right of way consisted to a great extent of embankments with slopes of various degrees and uneven terrain. Telephone and telegraph poles with guy wires. are common and of general use on railroad right of ways. They were present on the railroad property where Schwartz was to do the mowing. It would certainly have been impossible for the defendant to have removed the guy wires and poles or to have provided a level terrain for Schwartz. It would also have been impractical to have provided a guide for the purpose of informing Schwartz of the location of the guy wires and poles or to inform him where, in the opinion of the guide, the slope was too steep for the tractor to be used with safety. Schwartz was an experienced operator of tractors and in all probability knew as much as anyone of the dangers of using tractors on a steep incline. Plaintiff introduced evi-

dence that the weeds and brush were so high and dense as to obstruct the view of the lower part of the guy wire. The upper part of the guy wire and the pole to which it was attached were within view. But, be that as it may, Schwartz was employed for the very purpose of cutting the weeds and brush. Had the defendant cleared the ground before employing Schwartz, there would have been no weeds and brush to cut. Again, who could have made the place safe for such weed cutters? Further, the plaintiff says the level space below where the guy wire entered the ground was not wide enough for a tractor to pass. The level space was not intended to be used for that purpose. After viewing the case from all angles, we fail to see wherein the defendant was negligent or failed in its duty to Schwartz. Mowing weeds on the slopes of railroad embankments with tractor power is somewhat dangerous and cannot be made entirely safe. It is common knowledge that sometimes tractors do turn over when used on embankments. The operator of the tractor must use his own judgment and avoid the danger. No amount of care on the part of defendant could have eliminated the danger in this case. In the case of Eckenrode v. Pennsylvania R. Co., 164 F. (2d) 996, l.c. 1000, the court at the conclusion of the opinion made the following comments which may well be used in this case: "Any Federal Judge who sees these railroad accident cases come in and go out of the courts must be troubled by the unsatisfactory social results obtained. Some claimants go out with very large verdicts. Others go out with nothing. Yet * * * the disastrous consequences upon the victim or his family are equally heavy. But so long as the law is that the defendant must be negligent for the plaintiff to recover for his injuries it is our responsibility to apply the negligence test honestly and not to pretend that there is negligence when it does not exist. It does not exist in this case." In that case there was a judgment for the defendant. It was affirmed by the United States Supreme Court. See 335 U. S. 329.

Plaintiff has cited many cases, both state and federal, to support her contention that defendant was negligent in failing to provide her husband a safe place in which to work. We have examined a number of these and by referring to the cases cited it will be found that in each there was evidence of some defect in the appliance or some lack of due care. In Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S. W. (2d) 568, Joice was injured when an extra train struck a motorcar. The negligence charged was failure to notify Joice of the whereabouts of the extra train and in furnishing him a defective motorcar for use in assigned work. In Curtis v. Atchison, T. & S.F. Ry. Co., 363 Mo. 779, 253 S.W. (2d) 789, the negligence charged was failure to have the lights burning [239] which had been provided to illuminate the yards where Curtis stumbled over an obstacle. In Holmes v. Terminal R. R. Assn. of St. Louis, 363 Mo.

1178, 257 S.W.(2d) 922, Holmes was injured when he slipped on an icy surface trying to pull a heavy baggage truck. The negligence was failure to have the truck properly lubricated, failure to remove the ice, and that the truck was too heavy for one man to move. In Willis v. Atchison, T. & S.F. Ry. Co., 352 Mo. 490, 178 S.W. (2d) 341, there was a defect in the loading device used in loading and unloading automobiles on and off railroad cars.

In Lavender v. Kurn, 327 U. S. 645, 66 S. Ct. 740, Haney, the deceased, a member of a train crew, was alleged to have been struck in the back of the head by a mail hook hanging loosely on the outside of a mail car. Haney was struck as the train passed him at the rate of 8 to 10 miles per hour. In Blair v. B. & O. R. Co., 323 U. S. 600, 89 L. Ed. 490, the plaintiff was injured while unloading heavy steel pipes from a railroad car. Blair had protested that the pipes were too heavy for him to unload and suggested that the railroad car should be moved to the consignee's place of business where proper equipment for unloading such pipes was located. Blair was ordered to unload the pipes. In attempting to perform that task, he was injured. One of the charges of negligence was that the floor of the warehouse was uneven where the unloading took place.

Cutting weeds and brush on railroad right of ways whether by tractor power, or horse-drawn mowing machines, or by scythes in the hands of employees is accompanied by dangers of various degrees that cannot be avoided. A man cutting weeds on a steep embankment with a scythe may strike a wire, rock, or other substance causing him to fall to his injury. So, in this case, if Schwartz had been warned that there were present on the right of way such obstacles as telephone and telegraph poles, guy wires, uneven terrain, etc., it would not have conveyed to Schwartz any information which he did not already know. It is, therefore, our opinion that the evidence in this case was insufficient to sustain a finding of negligence.

It follows that the judgment in plaintiff's favor must be and is hereby reversed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Ellison,* P. J., and *Dew* and *Anderson,* Special Judges, concur; *Leedy,* J., not sitting.

ON MOTION FOR REHEARING, TO MODIFY OPINION, OR TO TRANSFER TO COURT EN BANC

PER CURIAM:—Respondent has filed motions for rehearing, or to modify the opinion, or to transfer to the court en banc, wherein it is vigorously urged that this court decided the case on an issue that was not in the case.

It is boldly asserted that respondent did not submit the case to a jury on the theory that the defendant failed to furnish a safe place

to work. The suggestions in support of the motions begin with the following statement: "The court ·missed the boat in this case. It got in the wrong boat and took plaintiff for a free ride over the rapids, and splashed water on him; and it was not Holy water." That statement calls for a review of respondent's brief.

Point I of the brief was devoted to the question that the deceased was an employee and not an independent contractor. That question was not decided but for the purpose of the opinion we took for granted that the relation of employer and employee existed.

Point II reads as follows: "The Plaintiff Made a Submissible Case." Thirty cases were cited under that statement.

[240] Point III reads: "Plaintiff's Instruction No. 2 Is Correct.

"A. The decedent was engaged in interstate transportation or commerce as a matter of law." Five cases were cited.

"B. If instruction No. 2 was erroneous defendant joined in that error." Ten cases were cited.

"C. The facts which the jury found under Instruction No. 2, as a matter of law, amounted to negligence in failing to furnish a reasonably safe place to work." Seven cases were cited.

"D. Defendant had an absolute duty to warn deceased of the hidden dangers and Instruction No. 2 properly submits this ground of recovery." Ten cases or authorities were cited here.

Now, let us look at respondent's argument in the brief. At page 34 thereof, we find the following: "C. The facts which the jury found under Instruction No. 2, as a matter of law, amounted to negligence in failing to FURNISH A REASONABLY SAFE PLACE TO WORK." Emphasis was furnished by respondent. The brief continues as follows: "With reference to the ground of recovery that deceased was not furnished a reasonably safe place in which to work, Instruction No. 2 requires a finding: * * *." This is followed by nine separate statements of facts which respondent insists the jury was required to find.

Respondent concludes his argument with this statement: "It, therefore, appears that the facts and the authorities authorized the submission as given in Instruction No. 2, of defendant's failure to furnish a reasonably safe place to work, including the employment of an unsafe method, or failure to furnish additional help if the mowing machine was to be used."

It is apparent that if this court got in the wrong boat, it was respondent that led the way and took plaintiff over the rapids. We may add that if water was splashed on plaintiff, it was her attorney that did the job. The writer of the opinion is the author of these comments.

The motions for rehearing, or to modify the opinion, or to transfer to the court en banc are overruled.