Della **WILMOTH,** Executrix of the Estate of E. A. Wilmoth, Deceased, Respondent,

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY,** a corporation, (Rock Island Lines), Appellant.

No. 55973.

Supreme Court of Missouri, Division No. 1.

Nov. 20, 1972.

Gage, Tucker, Hodges, Kreamer, Kelly & Varner, William L. Turner, Kansas City, Terry, Stewart & Negaard, Jack C. Terry, Independence, Lehmberg, Bremyer, Wise, Jones & Hopp, John K. Bremyer, McPherson, Kan., for respondent.

Thad C. McCanse, James & McCanse, Kansas City, for appellant.

KEITH P. BONDURANT, Special Judge.

This is an action brought under the Federal Employers' Liability Act by the Executrix of E. A. Wilmoth, deceased, for his wrongful death. Mr. Wilmoth died of a heart attack while employed as a station agent by defendant railroad at McPherson, Kansas, his death occurring in the depot shortly after he had unloaded a number of sacks of mail from defendant's train. The case was submitted to the jury on the basis that defendant failed to provide plaintiff's decedent with sufficient help. Plaintiff received a judgment in the amount of $45,000.00. Defendant seeks a reversal of plaintiff's judgment and an entry of judgment in its favor on the ground that plaintiff failed to make a submissible case, and alternatively claims errors in instructions and in admission of evidence entitling defendant to a new trial.

Since the amount in dispute exceeds $30,000.00 and the trial and appeal occurred prior to January 1, 1972, this court has jurisdiction under Section 3 of Article V of the Missouri Constitution as amended in 1970, and § 477.040, RSMo 1969.

Defendant railroad's first and most basic claim of error is that there was no credible evidence that the railroad

failed to provide sufficient help which was the only basis for finding defendant negligent. The Federal Employers' Liability Act, 45 U.S.C.A., § 51 et seq., places a duty upon the employer to provide a sufficient number of employees to perform assigned work. This duty cannot be delegated nor transferred to another. Johnson v. Missouri-Kansas-Texas R. Co., Mo.Sup., 334 S.W.2d 41; Blair v. Baltimore & Ohio R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490; Southern Ry Co. v. Welch, 6th Cir., 247 F.2d 340. It applies to a particular assigned task under circumstances of particular difficulty even though such task has been performed by fewer employees in the past or under less difficult circumstances. Southern Ry Co. v. Welch, supra.

In ruling on defendant's motion for a directed verdict, the trial court was required to submit the case to the jury if the plaintiff's evidence justified with reason the conclusion that the employer's negligence played any part, even the slightest, in producing the death of the decedent. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Kiger v. Terminal R. R. Ass'n of St. Louis, Mo. Sup., 311 S.W.2d 5, 8; Cleghorn v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 289 S.W.2d 13; Southern Ry. Co. v. Welch, supra. In addition to stating that even the slightest causal connection is enough to sustain a finding of liability, the United States Supreme Court has held that little evidence is required to create a jury issue as to such connection. Stinson v. Atlantic Coast Line R. Co., 355 U.S. 62, 78 S.Ct. 136, 2 L.Ed.2d 93. The burden of the employee is met when there is proof, even though entirely circumstantial, from which the jury may with reason make the inference that the defendant's negligence contributed in any way to decedent's death. Rogers v. Missouri Pacific R. Co., supra, which reversed and disapproved the opinion of this court in Rogers v. Thompson, Trustee, 284 S.W.2d 467, states the rule as follows: " * * * the test of a jury case is simply whether the proofs justify with

reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that * * * the jury may also with reason * * * attribute the result to other causes, including the employee's contributory negligence." 352 U.S. 500, 506, 77 S.Ct. 443, 448.

The question, then, is whether there was any credible evidence, direct or inferred, from which the jury could have found that the railroad was negligent in failing to provide sufficient help to decedent in connection with his duties, and that its negligence played even the slightest part in promoting the death of the deceased. We believe the plaintiff's evidence amply sustained this burden.

Decedent was 61 years old at the time of his death. He had been employed by the Rock Island at McPherson, Kansas, continuously for 16 years. Since 1955, examinations by Doctor Nunemaker, a medical examiner for the railroad, had revealed that decedent was suffering from high blood pressure and hypertension, which was diagnosed as more than mild. Doctor Nunemaker performed follow-up examinations in January and March 1957, at the specific request of defendant's chief surgeon, and his findings were presented to the defendant. Decedent was under the care of Doctor Collier and Doctor Johnson, partners. Doctor Collier, a surgeon, was the appointed McPherson railroad doctor for defendant, but Doctor Johnson handled medical problems of railroad employees, including decedent. Doctor Johnson testified that decedent had a history of high blood pressure and was treated for this disease from March 1960, until August 1964. Decedent was worried about his heart and on August 20, 1960, a myocardial strain was revealed by an electrocardiogram.

When decedent was first assigned to the McPherson station in 1948 his duties as station agent involved the supervision of a telegraph operator, yard clerk, ticket clerk

and cashier. By 1964, the year of decedent's death, he had assumed the duties of the telegrapher, yard clerk and ticket clerk in addition to his regular duties as the agent. The railroad had reduced its station personnel from five men to two, decedent and Mark Penland. Decedent's scheduled duty hours were from 7:00 a. m. until 3:00 p. m. After decedent completed his regular shift, he was required to perform duties normally performed by the yard clerk which extended his quitting time by two to two and one-half hours so that his arrival at home was rarely before 5:30 p. m. Penland did not work on Saturdays. In order to help decedent handle the Saturday work, his high school son, Carl Wilmoth, worked Saturdays without pay and at other times when he could get away from school.

When decedent first reported to McPherson, he had an hour off for lunch which had been later reduced to 20 minutes. Between 1948 and 1964 the population of McPherson had increased from 9,000 to 11,000. Decedent's son, Carl, testified that from the time he first started going to the depot until his father's death, the number of railroad cars consigned in and out of McPherson locally on a daily basis increased from 30–40 to 60–70. During that period, expansion of operations by a refinery, a flour mill, and a feed company in McPherson caused much increase in rail shipments so that the dollar volume of business done at the station rose from $50,000–$60,000 to about $100,000 per month.

During the daytime two trains arrived at the McPherson station. Train No. 39 arrived daily at about 12:40 p. m. Train No. 40 was scheduled to arrive at 4:30 p. m. Defendant's witnesses, Konovalski and Golden, testified that Train No. 39 would have to be unloaded and on its way in 11 or 12 minutes. Upon its arrival an average of 50 sacks of mail, averaging 35 pounds each, would have to be unloaded. There would also be parcel post packages weighing up to 70 pounds, in addition to

empty and full cream cans weighing approximately 100 pounds apiece. There were also sacks of "slugs" and "refrigerators" which were so heavy that even dragging them could cause back strain. To remove the mail and baggage from Train No. 39 required the use of a flat platform truck, pulled manually, and weighing about 500 pounds. It had large iron wheels and was very difficult to pull. Prior to the change in Penland's lunch hour, both decedent and Penland would pull this vehicle to the side of the train, unload all the baggage and mail onto the truck, pull the loaded truck weighing approximately 1500 pounds and unload the contents onto a pick-up truck. There was evidence that on some occasions Penland would unload the baggage and mail without help, but the witness William Snyder, a section foreman, testified that decedent and Penland customarily worked together to unload No. 39, and that he and some of his men would also volunteer to help out when the loads were heavy.

Mark Penland's hours had been from 8:00 a. m. to 5:00 p. m., with a lunch hour from 11:00 a. m. to 12:00 noon. Three or four months before decedent's death, Penland's hours were changed to 9:00 a. m. to 6:00 p. m., and his lunch hour was subsequently changed to 12:30 p. m. to 1:30 p. m. There was evidence presented from which the jury could infer that Penland's working hours were changed in order to eliminate overtime payment. Regardless of the reason, the change in Penland's lunch hour made him absent at the time Train No. 39 got to the station and necessitated decedent's handling the unloading of the train alone. Carl Wilmoth testified that in order to relieve the strain on his father, he came down to the station from high school when he could to help his father unload. William Snyder testified that on many days the quantity of mail and baggage was so great that he and his section crew would volunteer part of their lunch hour to assist decedent. When the decedent would work the train alone, which was shown to be the

majority of the time after Penland's lunch hour was changed, he would be "real hot, tired and sweating." He would be exhausted when he got home and his condition required him to lie down and rest before he could have dinner.

On November 19, 1964, decedent unloaded Train No. 39 without any assistance. He walked into the depot after working the train alone. Witness Snyder was present and had witnessed decedent unloading the train. Decedent returned to his desk, took a handkerchief and wiped his forehead. His face was flushed. He leaned forward and mucus came from his nostrils. He slowly rose to his feet and suddenly fell to the floor dead. He had just completed unloading 38 sacks of mail, weighing approximately 1330 pounds aggregate, in an 11-or-12-minute span of time. This included pulling a 500-pound loading truck to the train, unloading mail onto the loading truck, then pulling a total weight of about 1830 pounds to the other end of the station platform where he loaded the mail onto a mail truck. Decedent's death was attributed to a coronary occlusion. Dr. Fred Lundgren, a specialist in heart disease, noted that decedent was performing literally the duties of three individuals during his working schedule.

■ This evidence was clearly sufficient to establish that decedent's death was occasioned by the defendant railroad's failure to provide sufficient help in general, and particularly by its failure to assure that help was available to work Train No. 39. The jury could conclude from the evidence that the age and physical condition of the decedent would dictate that he would not accomplish the duties of an agent, telegrapher, yard clerk and cashier, and that as his duties increased through the years in complexity and physical expenditure, the physical exhaustion of adding the handling of Train No. 39 to his already heavy schedule was too great a burden.

■ Defendant alleges that it cannot be held negligent, even if additional help should have been furnished, because deceased had an assistant, Penland, available, and did not use him and permitted Penland's lunch hour to be changed so that Penland was not available to work Train No. 39. We need not dwell at length on this contention, because it bears only on the common law defense of assumption of risk, Powell v. Walker, 195 Mo.App. 150, 185 S.W. 532, which has been abolished in F.E.L.A. cases, Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, and on contributory negligence, which is to be considered only for the purpose of diminishing damages, 45 U.S.C. §§ 53, 54.

In Southern Railway Co. v. Welch, 247 F.2d 340, a machine-grinder operator at defendant's rail reclamation yard, ruptured a disc after pulling and lifting 1600-pound rails onto rollers supported by 3-foot high tables. He had performed such work for four years and had previously strained and pulled his back. Defendant railroad contended, as in the instant case, that plaintiff was performing "what was always a one-man job." On the day of the injury circumstances of particular difficulty existed in that grime, tar, and dust on the rails were excessive and required additional force. Under such circumstances defendant had previously furnished additional help. Defendant proved that plaintiff did not request additional help nor make use of the help available on the date of the injury. That court stated, in Welch:

"It [defendant] urges that these facts bar recovery and require reversal. These objections, however, are based essentially on the doctrines of assumption of risk and of contributory negligence. But, since the enactment of 1939, 45 U.S.C.A. Section 51 et seq., 'every vestige of the doctrine of assumption of risk' has been eliminated from the Federal Employers' Liability Act. Tiller v. Atlantic Coast Line Railroad Company, 318 U.S. 54, 63 S.Ct. 444, 446, 87 L.Ed. 610. See also Thompson v. Camp, 6th Cir., 163 F.2d 396, 402, which held that

neither assumption of risk nor contributory negligence is a bar under the present Act.

"The decisions relied on by defendant do not lay down a hard and fast rule with reference to the necessity of protest or request for additional necessary assistance. Protest or request by the employee for additional help may, considered with other circumstances, constitute evidence of the employer's negligence. Stone v. New York, Chicago & St. Louis Railroad Company, 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441, and Blair v. Baltimore & Ohio Railroad Company, 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490. * * * In both the Stone and Blair cases, supra, the protest made by the plaintiff against what he considered inadequate assistance was mentioned as one of the circumstances indicating negligence. In neither case, however, did the Supreme Court declare that lack of protest in every case of inadequate help would exonerate the employer from performance of its duty." 247 F.2d l. c. 341.

◼ The trial judge properly submitted the issue of contributory negligence to the jury by Instruction No. 6, which required a finding that decedent was contributorily negligent if the jury believed that decedent had help available to him and failed to provide himself with sufficient help. Instruction No. 5 required the jury, if they found decedent contributorily negligent, to diminish the sum of damages "in proportion to the amount of negligence attributable to decedent." Both instructions were offered by defendant railroad, given by the trial judge at defendant's request, and defendant is in no position to complain that the issue was not presented to the jury both as to a determination of contributory negligence and as to reduction of damages if such a finding is made. Indeed, this is the only way in which the issue could have been submitted under the Federal Employers' Liability Act. Southern Railway Co. v. Welch, supra, 247 F.2d 340, 342.

It is difficult to understand the basis of defendant's claim that assuming that more than one man should have helped unload the train, defendant cannot be found negligent because decedent had an assistant who could have been available but was not. Under the evidence presented, the jury could have found that decedent did not take reasonable action to insure that Penland was present to help him unload Train No. 39, and was thus contributorily negligent, because of which total damages should be reduced; likewise, the jury could have found from the evidence that the trainmaster had authority to, and did, so arrange Penland's hours of duty that his lunch hour included the period of arrival and unloading of Train No. 39.

Plaintiff's evidence on this point was from William Snyder, the section foreman, who testified that the trainmaster, Al Konovalski, had the authority to change Penland's lunch schedule, and the testimony of Mark Penland that he and decedent wanted to set a lunch hour from 11:30 a. m. to 12:30 p. m. that would have enabled Penland to be available to assist decedent with Train No. 39 but that Konovalski would not approve it. Defendant's witnesses, Konovalski and Roscoe Golden, acknowledged that the trainmaster had the authority to set Penland's lunch hour although denying that he had done so. Since plaintiff's evidence established that handling Train No. 39 required more than one man, the jury had the right to infer from all the circumstances in evidence that it would not be reasonable to assume that decedent would voluntarily dismiss available help and elect to work the train by himself. Plaintiff was entitled to go to the jury on circumstantial evidence alone. Rogers v. Missouri Pacific R. Co., supra. The evidence also showed that Penland's lunch hour was changed to 1:30 to 2:30 following decedent's death so that a hardship would not be imposed on Roscoe Golden who succeeded decedent as station agent. Defendant maintained that decedent was bound only by the clerk's union agreement with regard to setting Penland's lunch hour, that such agreement required only that the lunch

hour be set not earlier than 3½ hours after starting time, and that it could thus have been fixed from 1:30 to 2:30. The defendant did not explain why, if the railroad was so rigidly bound by the union agreement, it had moved Penland's starting time from 8:00 a. m. and 9:00 a. m. if, in so doing, it would deprive decedent of help on Train No. 39, nor why Penland in former years had been reporting to work at 8:00 a. m. and taking his lunch period from 11:00 a. m. to 12:00 noon, a full one-half hour earlier than dictated by the collective bargaining agreement then in effect.

The cases cited by defendant do not support defendant's contention that there was no credible evidence in this case that defendant failed to provide sufficient help. Ferguson v. St. Louis-San Francisco Ry. Co., Mo.Sup. en banc, 307 S.W.2d 385, was reversed by the United States Supreme Court. (356 U.S. 41, 78 S.Ct. 671, 2 L.Ed. 2d 571.) In any event, that case involved the question of negligence under F.E.L.A. in failing to furnish a safe place to work and had nothing to do with sufficient help. Louisville & N. R. Co. v. Willhite, 300 Ky. 75, 187 S.W.2d 1010, and Texas & P. Ry. Co. v. Rampy, Tex.Civ.App., 71 S.W.2d 387, involved greatly different factual situations where there was no showing of circumstances which could with reason justify a finding of negligence by the employer. New York, N. H. & H. R. Co. v. Cragan, 1st Cir., 352 F.2d 463, held that the fact that defendant railroad over a period of years had reduced the number of its station employees did not, of itself, absent some evidence of causation and other circumstances justifying an inference of negligence, make defendant liable for a heart attack suffered by an employee while alone at work. Cleghorn v. Terminal R.R. Ass'n of St. Louis, Mo.Sup., 289 S.W.2d 13, affirmed a judgment for a plaintiff switchman for injuries he sustained when he fell over a black switchstand at night, on the basis that the employer had failed to provide a safe place to work. Schwartz v. Kansas City Southern Ry. Co., 365 Mo. 17,

275 S.W.2d 236, an action by administratrix against the railroad for death of her husband who was killed when his tractor overturned on him while he was mowing weeds on railroad right of way, held only that the evidence was insufficient to establish negligence of the railroad in failing to furnish decedent a safe place to work or to warn him of a contour of the ground which should have been obvious. The other cases cited by defendant either involve totally dissimilar facts and circumstances from those in the instant case, or stand for admitted principles of law such as that plaintiff has the burden of proof even under the Federal Employers' Liability Act, and that there must be present facts from which a jury may infer negligence and causation.

▮ Defendant's next assignment of alleged error is that the railroad relied on opinions of its doctors who examined decedent and found him fit for duty, that there was no negligence on the part of the examining doctors, and that therefore defendant could not be held negligent in permitting decedent to continue in his duties as agent. We find the point to be without merit. Doctor Collier, Doctor Johnson, and other physicians employed by defendant railroad who had examined deceased over a period of years uniformly qualified the decedent for the position of "agent" or "agent-operator." The duties of an agent, the job for which decedent qualified, consisted of general supervision of the station, making of periodic reports and doing various paper work. No evidence was introduced to indicate that decedent had been qualified to perform the tasks of part-time cashier, mail and baggage handler and yard clerk, in addition to performing the duties of an agent. Moreover, there is absolutely no indication that the examining doctors who were aware of decedent's high blood pressure and hypertension had or could have had any knowledge of the change in schedules which deprived decedent of help in unloading Train No. 39,

nor any suggestion that decedent was often required to unload the train by himself.

■ Reliance upon the opinions of doctors does not relieve a defendant of negligence where the defendant knows that its employee is performing duties other than those for which he has been cleared for continued employment.

Brown v. Scullin Steel Co., 364 Mo. 225, 260 S.W.2d 513, and Carter v. Ries, Mo. Sup., 378 S.W.2d 487, cited by defendant, are inapplicable to the present case. Neither case arose under the Federal Employers' Liability Act. In Brown, supra, liability was premised upon the common law, master-servant doctrine of tort as opposed to the statutory requirements of the Federal Employers' Liability Act. Section 54 of the Act specifically abolishes the common law master-servant doctrine in F.E.L.A. cases. The statutory guidelines in F.E.L.A. cases are enunciated in Rogers, supra, and completely negative reliance on the common law theory of negligence in master-servant cases. The Carter case, supra, involved an action brought directly against the physician where the question of the employer's reliance upon the physician's judgment was never raised.

Moreover, in Brown v. Scullin Steel Co., supra, the issue was whether or not the employer was negligent in permitting his employee to work with a heart condition, not, as here, whether the defendant was negligent in failing to provide sufficient help. In Brown, the physician had certified that the plaintiff could, with reasonable safety, do the work he was ordered or permitted to do and stated that the employee's heart murmur had nothing to do with his physical condition. In the present case there was a long history of high blood pressure, abnormal EKG's and fainting spells, and decedent's medical testimony was that the exertion, emotional strain, and exposure of decedent's job caused his death.

■ Defendant next complains that Instruction No. 2, the plaintiff's verdict directing instruction, was improper. Plaintiff submitted her case on the issue of failure to provide adequate help, a theory of negligence concerning conditions of which the defendant had constructive knowledge. The instruction is taken verbatim from M.A.I. 24.01, applying specifically to F.E.L.A. cases and postulates the fourth theory of constructive notice, i. e., failure to provide reasonably adequate help. It is only in the event that plaintiff submits an act of negligence, constructive knowledge of which is not chargeable to the railroad, that plaintiff must submit an additional paragraph providing that "defendant knew or by using ordinary care should have known of such condition * * *." The trial court was correct in submitting plaintiff's case by using M.A.I. 24.01.

Defendant's further claim that such instruction was not supported by the evidence has been disposed of, supra, in our holding on defendant's first claim of error.

Defendant railroad's final claim of error concerns the admission over defendant's objection of certain evidence which bears only on contributory negligence and mitigation of damages. In June 1966, a statement was taken from Mark Penland by plaintiff's counsel in McPherson, Kansas. It was duly recorded in question and answer form. In June, 1969, the deposition of Mark Penland was taken by the plaintiff. The deposition was taken more than five years after decedent's death and three years after the recorded statement. In the statement Penland stated he and the deceased wanted to set Penland's lunch hour from 11:30 a. m. to 12:30 p. m. so Penland would be available to help deceased with unloading Train No. 39, but that the trainmaster would not approve and wanted it from 12:30 to 1:30 so it would not conflict with the union agreement. During taking of his deposition, Penland testified that his lunch hour was set according to the labor agreement, and on cross-examination stated

that he and the deceased had agreed it was convenient for Penland to take his lunch hour from 12:30 to 1:30 and then submitted this schedule to the trainmaster. On redirect examination, Penland was asked if he recalled the taking of his recorded statement, to which he replied affirmatively. The statement was not introduced, but to refresh Penland's recollection a portion was read to him concerning the setting of the lunch hour, he was asked if this helped him recall any specific discussion between him and deceased relative to the setting; he replied affirmatively and thereafter, in continuing questions and answers, supported the answers previously given in his recorded statement, "as I recall," "as I recollect" or "if I am not mistaken."

Defendant claims that the use of the statement was an attempt to impeach plaintiff's own witness in the absence of a showing of surprise or hostility, and further asserts that the testimony in question does not amount to substantive evidence because of the qualification of the testimony by such words as "if I am not mistaken" and "as I recollect," citing Hayes v. Kansas City Southern Ry. Co., Mo.Sup., 260 S.W.2d 491; Crabtree v. Kurn, 351 Mo. 628, 173 S.W.2d 851; Armstrong v. Croy, Mo.App., 176 S.W.2d 852; and Dill v. Poindexter Tile Co., Mo.App., 451 S.W.2d 365, 372. Plaintiff contends that the reference to the statement was merely to refresh the witness' recollection and memory by reading to the witness a statement previously made by him. State v. Renfro, Mo.Sup., 408 S.W.2d 57; Ford v. Louisville & N. R. Co., Mo.Sup., 183 S.W.2d 137, 139; 98 C.J.S. Witnesses § 357, p. 81. Plaintiff further calls attention to holdings of this court that qualifications such as "as I recall," "as I recollect," or "if I am not mistaken," do not rob testimony of probative value. State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, which specifically rejected reliance upon Armstrong, supra, in holding that there is a distinction between a witness' "impressions" or "opinions" as com-

pared to his own observations, 189 S.W.2d 314, 323.

It was obvious that the passage of three years between the recorded statement and the deposition had impaired Penland's memory as to whether he and deceased had endeavored to secure an earlier lunch hour for Penland. The witness' answers with regard to his working hours, his lunch hour, and the individuals responsible for the change were vague and ambiguous due to the lapse of time. The trial judge, who had opportunity to examine Penland's deposition prior to its introduction in evidence, properly sustained defendant's objections and disallowed portions of Penland's testimony where his answers were prefaced or couched in terms such as "I suppose," including his statement that he "supposed" the trainmaster established his lunch hour. The witness was asked if he recalled the taking of his prior recorded statement. The statement was not introduced in evidence. After the witness acknowledged the taking of his statement, he was read a small portion thereof "to refresh your recollection." The witness was asked to acknowledge the giving of his statement and then questions were propounded which incorporated a question and answer previously given by Penland. Such questions did, according to Penland, refresh his recollection of what had transpired more than five years before, which he had recalled three years before the taking of his deposition. It was in the clear discretion of the trial court to permit counsel to frame his questions so as to refresh Penland's memory by reading to him a statement previously made by him. State v. Renfro, supra. The statement was employed for the limited purpose of probing the witness' recollection and recalling to his mind the statement he had previously made, and to draw out the witness' recollection of who set the lunch hour. Following the railroad's reduction in station staff, Penland was the only employee remaining on the day shift to work with decedent. He was a resident of Kansas whose appearance in Missouri

could not be compelled. Of necessity, Penland's deposition was the equivalent of his testimony at the trial. If his recollection could have been refreshed had be appeared personally to testify, there appears no reason why the same could not be done when his deposition was taken out of state.

In Hayes v. Kansas City Southern Ry. Co., supra, the trial court permitted plaintiff to enter the prior statement into evidence and to read it to the jury in order to impeach the witness; here, the statement was not marked or introduced and was limited to refreshing his recollection, not to impeaching him. In Crabtree v. Kurn, supra, this court approved the reading from the witness' prior deposition because the plaintiff was surprised at the contradictory testimony of the employee. Plaintiff asserts that she properly could have introduced the statement because of surprise. It is not necessary to consider this point since the statement was not offered in evidence.

■ Plaintiff earnestly argues that even if Penland had not recalled his prior statement, plaintiff could have introduced it on grounds of surprise or hostility, and that, although our courts have traditionally followed the common law rule that forbids a party from impeaching its own witness (Hayes v. Kansas City Southern Ry. Co., supra), the tendency is to relax the rule if not to abolish it, and points out that it has long been subject to criticism as being a rule not designed to seek out truth; that its reasons fail where resort is made to the witness' prior self-contradictions rather than an attack on the witness' character (3A Wigmore, Evidence, Secs. 902–908); that it is not generally followed in the Federal Courts (London Guarantee & Accident Co. v. Woelfle, 8th Cir., 83 F.2d 325, 332); that Missouri abolished the rule with respect to an adverse party in Wells v. Goforth, Mo.Sup., 443 S.W.2d 155. We find it unnecessary to consider this contention, holding as we do that in the circumstances here presented, the reference to the

prior statement was not an attempt to impeach the witness but was offered solely to refresh his recollection and that the trial judge properly admitted it for this purpose. We further hold that Penland's qualifications to certain answers, premised on "as I recollect" and similar phrases, do not destroy their probative value, but go only to the weight of such testimony. State v. Brinkley, supra.

We find no error in any of the rulings of the trial court, in the submission of evidence, in any instruction, or in the verdict and judgment in the cause, and accordingly affirm the judgment for the plaintiff against the defendant.

Affirmed.

HOLMAN, P. J., and BARDGETT, J., concur.

SEILER, J., not sitting.