Ronald E. WOODFORD, Plaintiff-Respondent,

v.

ILLINOIS CENTRAL GULF RAILROAD COMPANY, a corporation, Defendant-Appellant.

No. 35464.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 26, 1974.

Motion for Rehearing or for Transfer to Supreme Court Denied Jan. 14, 1975.

Application to Transfer Denied
March 10, 1975.

**714**

Voorhees & Summers, Alphonso H. Voorhees, St. Louis, for defendant-appellant.

Gray, Friedman & Ritter, Charles E. Gray, St. Louis, for plaintiff-respondent.

DOWD, Chief Judge.

Action under the Federal Employers' Liability Act. Defendant appeals from a judgment entered for plaintiff as a result of a jury verdict for $160,000.

Plaintiff was injured in 1967 while working for defendant railroad. A lawsuit followed. The case was settled in October of 1968, and plaintiff returned to work for the railroad. This appeal deals with an alleged second injury in 1969. Both accidents involved disc injuries to the same area of the back.

The following facts were testified to at trial: In 1967, plaintiff sustained a back injury during the course of his employment as a carman for defendant. A surgical procedure[1] was performed and plaintiff returned to work in 1968, after beginning a lawsuit against defendant. This lawsuit was ultimately settled for $30,000, and plaintiff's suit was dismissed with prejudice. On October 12, 1968, plaintiff signed a release of any claim against defendant on account of "injuries sustained by Ronald E. Woodford at or near Bloomington, Illinois on or about the 1st day of August 1967." At the time plaintiff executed the release there were present plaintiff's attorney, the railroad attorney, and the claim agent for the railroad. Plaintiff was told at that time that he would not lose his job but would continue his employment as a burner-welder. He was furnished an assistant "at all times" on this job. He was able to do his job under the job conditions existing at that time. He had "slight problems" with his back when the weather changed. However, the release recited that $30,000 was the sole consideration received by plaintiff and that the release was the entire agreement between the parties.

After the 1967 injury, plaintiff returned to work in March of 1968. During the first part of August, 1968, plaintiff changed jobs from carman to burner-welder because added duties at his old job were causing him soreness and stiffness in his lower back. The general foreman promised plaintiff that he would have a helper whenever he was doing heavy work.

In September of 1968, plaintiff was examined by a Doctor Harold Walters, who had been seeing plaintiff since January, 1968. Doctor Walters testified that at the time of the September examination, plaintiff would have been able to continue doing the work of a burner-welder, but that plaintiff should not be subjected to a lot of bending, stooping, lifting or straining. Doctor Walters testified that if plain-

1. This consisted of a discogram with the injection of chymopapain into the disc spaces.

tiff would have continued to do light work his condition should have stabilized and that many people who have ruptured discs learn to live with them, as long as there is not too much strain on the back.

During the ensuing months, plaintiff often suffered discomfort and pain when the work became too heavy or when extra work was assigned. Plaintiff sometimes received help during this time, but sometimes he requested help and it was refused. In December of 1968, plaintiff was assigned extra work beyond the ordinary duties of a burner-welder. The extra work included lifting and moving heavy pieces of metal, as well as moving box cars. This extra work affected plaintiff's back condition, and he complained to the general foreman frequently. In July of 1969, plaintiff was hospitalized, and operated on for the removal of a ruptured disc. Plaintiff was off work three months and then went back to work with a doctor's release. In November of 1970, plaintiff was rehospitalized and a spinal fusion was performed. This time the doctor's release limited plaintiff to light work only. Plaintiff was released on July 28, 1971, and since that time has not been employed by defendant, but has held several jobs, some of which have caused him pain.

Plaintiff's amended petition alleged that he was an employee of defendant at the time of his injuries; that during the year 1969, plaintiff was injured while doing work assigned to him by defendant which defendant knew or should have known would result in great bodily injury to the plaintiff. Plaintiff claimed that defendant failed to provide plaintiff with both reasonably safe working conditions and adequate help, that such failure by defendant was the cause of substantial injuries to plaintiff's back, and that by failing to provide such safe conditions and adequate help, defendant was thereby negligent. As a result of these injuries, plaintiff will continue to suffer severe pain and have difficulty holding steady employment.

Defendant's amended answer raised three defenses: (1) plaintiff was contributorily negligent; (2) plaintiff had signed a release in 1968 regarding a 1967 accident which covered these same injuries; (3) plaintiff had begun a lawsuit on these injuries in 1968 which was dismissed with prejudice and is therefore res adjudicata to this action.

Plaintiff contends that the 1969 injuries were new injuries and not covered either by the release or the former lawsuit.

On this appeal the defendant raises the following four points: (1) trial court erred in overruling defendant's motion for directed verdict; (2) trial court erred in refusing to give two instructions offered by defendant; (3) trial court erred in admitting certain testimony over defendant's objections, and (4) the verdict was excessive.

The first point presented by defendant-appellant is that trial court erred in overruling defendant's motion for a directed verdict. Defendant raised two contentions in this motion: (1) the release signed by plaintiff in October, 1968 covers these injuries and precludes plaintiff from bringing this suit and (2) plaintiff's previous suit was dismissed with prejudice and is res judicata to plaintiff's present action.

■ In reviewing defendant's motion for directed verdict, it is the duty of appellate courts to consider only the evidence most favorable to plaintiff, the reasonable inferences to be drawn therefrom and to disregard defendant's evidence unless it aids plaintiff's case. Pavyer Printing Mach. Wks. v. South Side Roofing Co., 446 S.W.2d 445 (Mo.App.1969).

■ Having thus reviewed the evidence, we find that there was testimony by plaintiff's two doctors to the effect that plaintiff's injuries were sustained as a result of the heavy lifting required of plaintiff by the added duties of plaintiff's job. The doctors also testified that in September,

1968 plaintiff was capable of doing the work assigned. Plaintiff also testified that in October, 1968, he was capable of performing his work as a burner-welder under the job conditions existing at that time. He was furnished a helper at all times on the job. Trial court, therefore, could have concluded, as did the doctors testifying for plaintiff, that these were new injuries and not covered by the release, especially since the release was by its terms limited to the injuries sustained in the 1967 accident in Bloomington, Illinois.

■ Defendant's second claim on his motion for directed verdict was that the dismissal of plaintiff's 1968 suit is res judicata to his present claim. We note initially that the principle of res judicata requires that four "identities" be present before application. They are: identity of the thing sued for, identity of the cause of action, identity of the persons and parties to that action, and identity of the quality of the person for or against whom such a claim is made. Jones v. Des Moines & Mississippi River Levee Dist. No. 1, 369 S.W.2d 865, 872 (Mo.App.1963).

■■ Again, taking the evidence in the light most favorable to plaintiff, there was medical testimony to the effect that plaintiff had considerably recovered from the 1967 accident and his condition was stabilized and was reinjured as a result of the heavy work required of him as a burner-welder. In light of this testimony, the "identity of the same cause of action" was not met and trial court properly ruled that the first suit was not res judicata to plaintiff's present action. Trial court is required to submit a case to the jury if plaintiff's evidence justifies within reason the conclusion that defendant's negligence was the cause of plaintiff's injuries. Wilmoth v. Chicago, Rock Island and Pacific R. Co., 486 S.W.2d 631, 634 (Mo.1972).

Appellant's second point on appeal is that trial court erred in refusing to give Instructions A and B as offered. The instructions purport to submit the same issues to the jury as were contended by defendant in his motion for directed verdict, i. e., that both the release and res judicata bar plaintiff's present claims. Instructions A and B, as offered by defendant, are as follows:

"INSTRUCTION NO. A.

Your verdict must be for defendant if you believe:

First, plaintiff signed and delivered the release to defendant, and

Second, plaintiff was paid $30,000.00, for such release.

"INSTRUCTION NO. B.

Your verdict must be for defendant if you believe:

That plaintiff previously filed a law suit against defendant for damages for the same condition which is the subject of this case which law suit was dismissed with prejudice to plaintiff."

It is defendant's argument that even if his motion for directed verdict on these two issues fails, he should, at the very least, be allowed to submit those theories to the jury. We need not reach this contention for the reason that the instructions are erroneous and the trial court was correct in refusing to submit them in the form they were offered.

■ Instructions may not be confusing, misleading, inadequate nor prejudicially erroneous. Tile-Craft Products Co. v. Colonial Properties, Inc., 449 S.W.2d 653, 656 (Mo.1970). The language of the instruction should be so plain that no doubt can arise as to its meaning. The spirit of jury instructions is to use "simple, direct, concise and unambiguous words and phrases that do not require further definitions." Black v. Kansas City Southern Railway Co., 436 S.W.2d 19, 27 (Mo. banc 1968).

■ Applying these rules to Instruction No. A, we find that Instruction A omits a material element of defendant's release theory, namely, that the release covered the injuries that plaintiff is now suing for. As the instruction was offered, the jury

would have to find for defendant if it merely believed a release had been executed. Plaintiff stipulated that he executed the release. The real issue, and the one which should have been submitted, is whether the release signed in October, 1968 covered the injuries now being sued for and was therefore a bar to plaintiff's second lawsuit. The issue was not whether a release had been executed. Instruction A is confusing insofar as it requires the jury to find a fact already admitted and prejudicially erroneous insofar as it omits an essential element of defendant's defense. Instruction A was properly refused.

■ Instruction B also fails to comply with the rules governing instructions. Instruction B fails to satisfy the requirement that instructions should be clear and unambiguous. The instruction requires a finding for defendant if the jury believed that plaintiff was suing for the "same condition" that plaintiff sued for in 1968. It is not clear from the instruction what the words "same condition" mean. The words could mean either that the jury could find for defendant if they found this injury to be the same injury as the 1967 injury, or they could find for defendant if plaintiff had the same *kind* of injury that he had in 1967. Clearly, if the instruction allows the jury to find for the defendant if the plaintiff was injured in the same place on his body, then the instruction is erroneous.

The ambiguity in the instruction can be easily explained by an example. Suppose the jury found that the plaintiff was injured in 1967. The injury was to plaintiff's back, so his "condition" is a back injury. Then suppose that the jury found that plaintiff was injured again in 1969 and again hurt his back. His condition in 1969 is again, a back injury. These two "conditions" are the same, and under the instruction as offered, the jury would therefore be required to find for the de-

fendant. This would be obviously incorrect. Instruction B, as offered, was ambiguous and would have been prejudicially erroneous if given. Trial court did not err in refusing to submit the instruction as offered.

■ Defendant further contends that the trial court erred in admitting over objection certain testimony [2] by the plaintiff concerning assurances that defendant had made to plaintiff during the negotiations for the 1968 release. The assurances were that plaintiff would not lose his job with the railroad, that plaintiff would continue his employment as a burner-welder, and that at all times, plaintiff would be furnished a helper "to do the heavy lifting, the sledging, and anything that was beyond my capacity to do."

Defendant contends that this testimony is an attempt to add to, or vary the terms of a final written agreement between the parties. Ahlgren v. Colvin-Weber Realty and Investment Co., 464 S.W.2d 505 (Mo. App.1971). However, we do not believe the evidence here was offered for the purpose of adding terms to the release, and therefore, trial court properly ruled on the objections.

We first note that plaintiff is proceeding on a negligence theory. It is obvious that this testimony is offered to show that defendant knew or should have known that plaintiff was unable to do heavy work. As such, the assurances made to plaintiff by defendant are relevant and material in that they show knowledge on the part of defendant of plaintiff's physical condition. The burner-welder job to which plaintiff was assigned did not include heavy lifting and usually had an assistant. Knowledge of plaintiff's condition was one of the factors required to show negligence by defendant.[3] This testimony was relevant to prove plaintiff's incapacity for heavy work and defendant's knowledge of this condition.

---

2. The objection also ran to references to the promises in both plaintiff's opening argument and in a letter from plaintiff's attorney to defendant's attorney.

3. In Hamilton v. Standard Oil Co., 323 Mo. 531, 19 S.W.2d 679 (banc 1929), the court held in a case with similar facts, that negligence was established when the "evidence

The assurances made by defendant that plaintiff was to continue as a burner-welder and that plaintiff was to have a helper, show knowledge of plaintiff's condition and thus support plaintiff's theory of negligence. Plaintiff is not suing on the assurances, which is the usual case where the parol evidence rule is applied. Ahlgren v. Colvin-Weber Realty, *supra*. The evidence was not improperly admitted.

■ Defendant's final contention on appeal is that the jury's verdict for $160,000 is excessive and requires either a new trial or a remittitur. The difference between an excessive verdict and a verdict which is the product of bias or prejudice on the part of the jury is that a remittitur will cure the first but only a new trial will cure the second. Deaner v. Bi-State Development Agency, 484 S.W.2d 232, 233 (Mo.1972).

■ Taking the argument for new trial first, defendant has the burden of showing bias and prejudice on the part of the jury. This he must do by showing more than a mere allegation that the verdict was excessive; appellate courts cannot find bias and prejudice solely on the grounds that the verdict is alleged to be excessive. Dean v. Young, 396 S.W.2d 549, 561 (Mo.1965); Deaner v. Bi-State Development Agency, *supra*. In order for a verdict to be motivated by sympathy, bias, passion and prejudice, the verdict must have been glaringly unauthorized by any of the evidence. Dean v. Young, *supra*. Defendant has failed to present any evidence of bias and we have been unable to find such evidence on the record before us; therefore, a new trial on the issue of damages would not be appropriate.

■ As to whether a remittitur is proper in this case, we are mindful of the fact that this point was raised in the trial court and overruled. Such a decision, i. e.,

the trial court's failure to order a remittitur, is only subject to reversal upon a showing of an abuse of the trial court's discretion. Morris v. Israel Brothers, Inc., 510 S.W.2d 437, 447 (Mo.1974). The factors bearing on whether a verdict is excessive are well known. They are: (1) the nature and extent of plaintiff's injuries, (2) the permanency of plaintiff's injuries, (3) plaintiff's age, (4) examination of cases involving awards for similar injuries, (5) due regard for economic factors (inflation, etc.), and (6) an awareness of the fact that the jury and the trial court had a superior opportunity to appraise plaintiff's injuries. Lawson v. Cooper, 475 S.W.2d 442, 449 (Mo.App.1972). Assessment of damages is primarily a jury function and manifest injustice must occur before verdicts will be set aside or adjusted. Lawson v. Cooper, *supra*. It is axiomatic that in reviewing the excessiveness of a verdict, only the evidence favorable to the plaintiff will be considered. Viewed in this light, the evidence shows plaintiff to have satisfactorily recovered from his first injury by the time of his second injury. Plaintiff was 37 years of age and had been earning about $735 per month. Plaintiff underwent two operations as a result of which he cannot hold down his old job. He has been forced to take inferior work. He will permanently suffer from pain and muscle spasms and is restricted in his activities. The record indicates that at the time of trial plaintiff had already suffered a loss of income in approximately $28,000. Plaintiff was 37 years old at the time of trial and based on life expectancy his loss of future earnings would exceed $160,000. This computation, of course, does not include pain and suffering.

We have examined the cases involving similar injuries and substantial awards, (see the collection of cases in Harp v. Illi-

tends to show that defendants did know that plaintiff was physically unable to do the work without probable injury to himself. With this knowledge, it was their duty to use every reasonable precaution, which ordinary care and prudence would dictate, to avoid subject-

ing plaintiff to risk of injury." *Also see* Wilmoth v. Chicago, R.I. & Pacific R. Co., 486 S.W.2d 631 (Mo.1972), a case in which defendant railroad was negligent in failing to provide sufficient help to an employee with heart trouble.

nois Central Railroad Company, 370 S.W. 2d 387, 397–398 (Mo.1963) and Cline v. Carthage Crushed Limestone Company, 504 S.W.2d 102, Footnote 6 (Mo.1973) ), and do not find this verdict to be manifestly unjust. Considering the broad discretion allowed the jury in fixing the amount of the award, the fact that the trial court approved the verdict, and viewing the evidence in the light most favorable to plaintiff, we cannot conclude that the trial court abused its discretion in failing to order a remittitur. In fact, our independent review of the record convinces us that the trial judge ruled correctly in failing to order a remittitur.

For all the above reasons, defendant has failed to demonstrate any error committed by the trial court. Accordingly, the judgment is affirmed.

SIMEONE, WEIER and KELLY, JJ., concur.